GEORGE HUNT, Attorney General,

*v.*

THE CHICAGO HORSE AND DUMMY RAILWAY COMPANY.

*Filed at Ottawa September 26, 1887.*

1. ATTORNEY GENERAL—*right to file information in restraint of operation of street railways.* The Attorney General of the State has the right to file an information in a court of chancery, to enjoin a horse and dummy railroad company from constructing and using a track in and along a public street of a city, where it has not legally obtained permission so to do from the proper municipal authorities.

2. MUNICIPAL CORPORATIONS—*use of streets for horse or dummy rail-* |121   638|
*roads—only on petition of adjacent proprietors.* The power conferred by |114a  1229|
the general Incorporation act upon the common councils of cities to grant
the use of streets for railway purposes lies dormant, and can not be exer-
cised until the requisite number of lot owners along the street authorize its
exercise, by petition. When this is done, the council is invested with power
to act, and not before; and this applies to all railroads, whether operated
by horse or steam power.

3. So the city council of a city incorporated under the general act for
the incorporation of cities and villages, has not the right or power to grant
to a horse or dummy railway company, the use of any of its streets, with-
out a petition of the owners of the land representing more than one-half
of the frontage of such streets.

4. Paragraph 90, of section 1, of article 5, of the act for the incorpora-
tion of cities and villages, prohibiting the grant of the right to lay any rail-
road tracks in any street to any steam or horse railway company, except
upon a petition of the owners of the land representing more than one-half
of the frontage of the street, etc., is a limitation upon the power granted
by paragraphs 9, 24 and 25 of the same section.

5. The paragraph mentioned is not repealed by "An act in regard to horse
and dummy railroads," approved March 19, 1874, there being no inconsist-
ency between their provisions.

6. REPEAL OF STATUTES *by implication.* Repeals of statutes by im-
plication are not favored by the law, and a later statute will never be held
to operate as a repeal of an earlier statute, unless the two are so inconsist-
ent or repugnant that they can not be reconciled; and it is the duty of the
courts to so construe them as to avoid such repeal by implication in all cases,
if such a construction can be reasonably adopted.

7. CONSTRUCTION OF STATUTES—*so that all on same subject may stand.*
All statutes relating to the same subject should be construed *in pari materia,*
so as to give each of them its appropriate effect. All such laws should be
construed together, so that no clause, sentence or word shall be superfluous
or inconsistent.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of Cook
county; the Hon. M. F. TULEY, Judge, presiding.

Mr. C. BECKWITH, for the appellant:

The bill was properly filed by the Attorney General. (Rev.
Stat. chap. 14, sec. 4, par. 12.) His duties are not limited
to those prescribed by law. *Commonwealth* v. *Railroad Co.*
27 Pa. St. 351; *Quincy* v. *Jones,* 76 Ill. 231; *Field* v. *People,*

2 Scam. 79; *Strother* v. *Lucas*, 12 Pet. 410; *United States* v. *Peralta*, 19 How. 343; *Supervisor* v. *United States*, 4 Wall. 128; *Russell* v. *Allen*, 107 U. S. 163.

As to the right of the Attorney General to maintain such a bill at common law, see *Attorney General* v. *Railroad Co.* 2 W. R. 330; *Attorney General* v. *Bridge Co.* 21 L. R. (Ch. Div.) 752; *Attorney General* v. *Cockermouth*, 18 Eq. 172; *Attorney General* v. *Railway Co.* 11 Ch. Div. 449; *Attorney General* v. *Railway Co.* L. R. (4 Ch.) 194; *Attorney General* v. *Railroad Co.* 125 Mass. 315; *Attorney General* v. *Railroad Co.* 133 id. 361; *Attorney General* v. *Railroad Co.* 16 Gray, 243; *Attorney General* v. *Cambridge*, id. 247; *Attorney General* v. *Ice Co.* 104 Mass. 249; *Ferry Co.* v. *Railroad Co.* 107 Ill. 450; *Railway Co.* v. *Chicago*, 96 id. 630; 2 Story's Eq. Jur. secs. 922, 923.

The ordinances are void, for the reason that a majority of the property owners of more than one-half of the frontage abutting upon the line of the proposed railroad did not petition the common council for the passage thereof.

Paragraph 90, of section 62, of the act in relation to cities, (sec. 1, art. 5,) is not repealed by the act in relation to horse and dummy railroads. As to repeals by implication, see *Harding* v. *Railroad Co.* 65 Ill. 90; *Perteet* v. *People*, id. 230; *Fowler* v. *Perkins*, 77 id. 271; *Bruce* v. *Schuyler*, 4 Gilm. 221; *Wragg* v. *Penn Township*, 94 Ill. 11; *Rawson* v. *Rawson*, 52 id. 62; *Goodman* v. *Jewett*, 24 Conn. 589; *Norwich* v. *Story*, 25 id. 47; *Callahan* v. *Osborne*, 37 id. 490; *Beach* v. *Meriden*, 46 id. 503; *Holton* v. *Daly*, 106 Ill. 131; *Mayor* v. *Magruder*, 34 Md. 381; *Bowen* v. *Lease*, 5 Hill, 225; *King* v. *Downs*, 3 T. R. 569; *Goddard* v. *Rostori*, 37 Mass. 410; *Dugan* v. *Giddings*, 3 Gill, 154.

Clause 90, of section 1, article 5, of the act relating to cities, and section 3 of the Horse and Dummy act, being *in pari materia*, should be construed together as if contained in the same act, so as to effect their several objects. *Catholic Congregation* v. *Germain*, 104 Ill. 440; *Bruce* v. *Schuyler*, 4 Gilm. 272.

HUNT v. CHICAGO HORSE AND DUMMY RY. CO. 641

Brief for the Appellee. Opinion of the Court.

There being no express repeal, it is the duty of the courts to construe the statutes so that the latter shall not repeal the former by implication. *Chicago* v. *Quimby,* 38 Ill. 278; *Card* v. *McCaelb,* 69 id. 317; *People* v. *Barr,* 44 id. 201; *East St. Louis* v. *Maxwell,* 99 id. 443; *Holton* v. *Daly,* 106 id. 139; *Ottawa* v. *La Salle County,* 12 id. 339.

Mr. FRANCIS ADAMS, for the appellee:

The Attorney General is not authorized by law to file the bill. The statute says he shall "perform such duties as may be prescribed by law," not such as are or may be, clearly referring to the future.

The proper remedy is *quo warranto.* Rev. Stat. chap. 112, sec. 1; *Railway Co.* v. *People,* 73 Ill. 541; *People* v. *Railway Co.* 88 id. 537.

No petition of property owners is necessary to the passage of a valid ordinance granting the use of a street to a horse railway company.

The act of 1874, in relation to horse and dummy railroads, is a separate and independent act, complete in itself, and intended as a substitute for all previous legislation in regard to its subject matter.

Upon the proposition that "a subsequent statute revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former:" *Illinois and Michigan Canal* v. *Chicago,* 14 Ill. 334; *Culver* v. *National Bank,* 64 id. 528; *Andrews* v. *People,* 75 id. 605; *Devine* v. *Commissioners,* 84 id. 590; *Dingman* v. *People,* 51 id. 377; *Bartlett* v. *King,* 12 Mass. 537; Sedgwick on Construction of Stat. 104, 105.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an information in chancery filed by George Hunt, Attorney General of the State of Illinois, on the relation of John McConnell, George McConnell and Benjamin F. McCon-

nell, to restrain the appellee company from proceeding with the construction of its railway in certain streets of the city of Chicago. A demurrer, filed by the company to the information, was sustained by the circuit court, and the information was dismissed for want of equity. The Appellate Court has affirmed the decree of the circuit court, and the case is brought before us by appeal from such judgment of affirmance. A statement of the substance of the information will be found in the opinion of the Appellate Court in *Hunt* v. *Horse and Dummy Railway Co.* 20 Bradw. 282.

But two questions are involved. The first relates to the power of the Attorney General to prosecute this proceeding. We agree with the Appellate Court, that "the institution of the present suit was clearly within the legal authority of the Attorney General," and we adopt as our own the reasoning of that court upon this subject, as found in 20 Bradw. 282, *supra*.

The second question relates to the right of the city council of Chicago to grant to appellee the use of certain streets without a petition of the owners of the land representing more than one-half of the frontage of such streets. We do not agree with the views of the Appellate Court upon this branch of the case, and so much of their opinion as relates to it is not adopted.

The only question to be considered is this : Was paragraph 90 of section 1 of article 5 of the general "Act to provide for the incorporation of cities and villages," (Hurd's Rev. Stat. 1885, chap. 24, p. 227) repealed by "An act in regard to horse and dummy railroads," approved March 19, 1874, in force July 1, 1874? (Hurd's Rev. Stat. 1885, chap. 66, p. 682.)·

The general Incorporation act above referred to was approved April 10, 1872, in force July 1, 1872. It is one of the allegations of the information, all of which are admitted by the demurrer to be true, that the city of Chicago was organized under this act in May, 1875, nearly a year after the Horse and Dummy act went into force.

Section 1 of article 5 of the act provides as follows: "The city council in cities, and president and the board of trustees in villages shall have the following powers: * * * *Ninth—* To regulate the use of streets, etc. * * * *Twenty-fourth—* To permit, regulate or prohibit the locating, constructing or laying a track of any horse railroad in any street, alley or public place; but such permission shall not be for a longer time than twenty years. *Twenty-fifth—*To provide for and change the location, grade and crossings of any railroad. * * * *Ninetieth—*The *city council* or board of trustees *shall have no power to grant the use of or the right to lay down any railroad tracks in any street of the city to any steam or horse railroad company except upon a petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes.*"

The act in regard to horse and dummy railroads consists of four sections, only two of which need be noticed. Section 1 provides, that any company incorporated for the purpose of constructing, maintaining or operating any horse or dummy railroad or tramway may enter upon and appropriate any property necessary for the construction of its road, etc., "and may, subject to the provisions contained in this act, locate and construct its road upon or over any street, alley, road or highway * * * in such manner as not to unnecessarily obstruct the public use of such street, alley, road or highway," etc. Section 3, which is the one of most importance to the present discussion, is as follows:

"No such company shall have the right to locate or construct its road upon or along any street or alley, or over any public ground, in any incorporated city, town or village, without the consent of the corporate authorities of such city, town or village, nor upon or along any road or highway, or upon any public ground without any incorporated city, town or village, except upon the consent of the county board. Such consent may be granted for any period not longer than twenty years,

·on the petition of the· company, upon such terms and condi-
tions, not inconsistent with the provisions of this act, as such
·corporate authorities, or county board, as the case may be,
;shall deem for the best interests of the public:    *Provided,* no
;such consent shall be granted, unless at least ten days' public
notice of the time and place of presenting such petition shall
have been first given, by publication in some newspaper pub-
lished in the city or county where such road is to be constructed,
and except upon the condition that the company will pay all
damages to owners of property abutting upon the street, alley,
road, highway or public ground upon or over which such road
is to be constructed, which they may sustain by reason of the
location or construction of the road, the same to be ascertained
and paid in the manner provided by law for the exercise of the
right of eminent domain."

There is no express repeal of paragraph 90 in the Horse and
Dummy act.    If there is any repeal, it must be by implication.
Repeals by implication are not favored by the law, and a later
statute will never be held to operate as a repeal of an earlier
statute, unless the two are so inconsistent or repugnant, that
they can not be reconciled.    To justify a repeal by implica-
tion the repugnance between the statutes must be clear. and
plain, and, if they are seemingly repugnant, it is the duty of
the courts so to construe them as to avoid such repeal by
implication.    In all cases, if a construction can be reason-
ably given by which both acts may stand, it will be adopted.
*Harding* v. *Rockford, Rock Island and St. Louis Railroad Co.*
65 Ill. 98; *Hume* v. *Gossett,* 43 id. 299; *Barr* v. *The People,*
103 id. 112; *The People* v. *Barr,* 44 id. 201; *City of Chicago*
v. *Quimby,* 38 id. 278; *Card* v. *McCaleb,* 69 id. 317; *Holton*
v. *Daly,* 106 id. 139; *McDonough County* v. *Campbell,* 42 id.
493; *City of East St. Louis* v. *Maxwell,* 99 id. 443.

It is also a well recognized rule that all statutes relating to
the same subject should be construed *in pari materia* so as to
give them all their appropriate effect and operation.    All laws

*in pari materia* are to be construed together, that no clause, sentence or word of any law shall be superfluous or inconsistent. *Frink* v. *King*, 3 Scam. 150; *Bruce* v. *Schuyler*, 4 Gilm. 272; *Catholic Congregation* v. *Germain*, 104 Ill. 440.

Applying these principles of construction to the statutes now under consideration, we see no such inconsistency or repugnance between them, that they can not both stand and be executed together.

Paragraph 90 provides that the city council shall have no *power* to grant the use of the streets except upon the petition of those owning more than one-half of the frontage of the streets to be used. This paragraph is a limitation upon the power granted by paragraphs 9, 24 and 25, as above quoted. (*Chicago Dock Co.* v. *Garrity et al.* 115 Ill. 155.) The charter of the city confers upon the council the power to grant the use of the streets to horse or steam railroad companies, and paragraph 90 restricts and limits the exercise of that power to cases where there is a petition of property owners.

The Horse and Dummy act merely specifies the conditions, upon which such limited and restricted power may be exercised in favor of the company desiring to construct or operate a road. It provides that the *consent* of the council to the use of the streets may be granted for a period of time not longer than twenty years, that such consent may be granted upon the petition of the company desiring it, that ten days' notice of the time and place of presenting the company's petition must be given by publication in a newspaper, and that the company must pay all damages sustained by owners of property abutting on the street, etc.

Paragraph 90 has reference to the relations between the common council as trustee and the property owners as beneficiaries in the trust. It has its origin in the right of the property owners, as a part of the general public, to control and limit the action of the council, which represents them as their agent. It is a doctrine, which can not be too often called to mind, that

the city holds the fee of the streets in trust for the benefit of the public. It follows naturally as a corollary from this doctrine, that the power to grant the use of the streets is conferred upon the council also for the benefit of the public, including the owners of property abutting upon the streets to be used. That power lies dormant until the requisite number of owners authorize its exercise by petition. When they do so, the limitation upon the power of the council no longer exists. That body is then prepared to deal with the railroad companies and not before.

The Horse and Dummy act has reference to the relations between the council and the companies who may desire to construct and operate their roads in the streets. That act prescribes the terms upon which the council is to deal with any railroad company, after the property owners have indicated their willingness to have the proposed road built.

What conflict or antagonism is there between a requirement that the common council shall not give their consent to the use of a street until the property owners thereon present a petition therefor, and a requirement, that the company, to whom such consent is to be granted, shall be limited to twenty years, shall present a petition and give notice thereof and pay damages?

Suppose that the 90th paragraph be added as a second proviso to the third section of the Horse and Dummy act, as above quoted, will not that section as thus constituted be consistent and harmonious in all its parts?

It is claimed, however, that the Horse and Dummy act is a separate and independent act, complete in itself and intended as a substitute for all previous legislation in regard to its subject matter. In behalf of this position the rule is invoked, that a subsequent statute revising the whole subject matter of a former one, although it contains no express words to that effect, operates as a repeal of the former. This rule can have no application to the present case. The Horse and Dummy act does not revise the whole subject matter of the general act for the

incorporation of cities and villages.    It does not even revise
the whole subject matter embraced in paragraph 90, because
that paragraph has reference to "any steam railroad com-
pany," that is to say, to *all* kinds of steam railroad companies,
while the act of March 19, 1874, refers only to *one* kind of
steam railroad company, known as a dummy railroad com-
pany.

We think that, even if the Horse and Dummy act was a re-
vision of the whole subject matter of paragraph 90, it can not
operate as an implied repeal of that paragraph on account of
the provisions contained in section 6 of article 1 of the act for
the incorporation of cities and villages.    That section is as
follows :    "All courts in this State shall take judicial notice of
the existence of all villages and cities organized under this act,
and of the change of the organization of any town or city from
its original organization to its organization under this act;
and *from the time of such* organization or *change of organization,
the provisions of this act shall be applicable to such cities and vil-
lages, and all laws in conflict therewith shall no longer be appli-
cable.*    But all laws or parts of laws not inconsistent with the
provisions of this act, shall continue in force and applicable to
any such city or village, the same as if such change of organ-
ization had not taken place."

The old charter of the city of Chicago remained in force
until May, 1875.    At that time the city adopted the general
Incorporation act by the votes of the people, as prescribed in
sections 1, 2 and 3.    Before that time, the general Incorpora-
tion act was not in force so far as the city of Chicago was
concerned.    May, 1875, was the time when that city made a
"change of organization" from the old charter to the general
Incorporation act.    Therefore, from May, 1875, all laws in
conflict with that act were no longer applicable.    As already
stated, the Horse and Dummy act went into force on July 1,
1874, and, if it was a revision of the whole subject matter of
paragraph 90 and for that reason in conflict with that para-

graph, then it was not applicable to the city of Chicago after its change of organization in May, 1875.

It is not denied, that, if before May, 1875, the legislature had expressly repealed any of the provisions of the Incorporation act or had made any express amendments of such provisions, the city of Chicago will be held by its vote at that time to have adopted the act, as changed by such repeal or such amendments. But it was manifestly not the intention of the legislature, that cities, which should vote to organize under the Incorporation act, should thereby adopt all other acts of the legislature, which might seem by implication to repeal some of the provisions of the general act. It was for this reason enacted that all laws in conflict with such provisions should not be applicable.

What did the electors of Chicago vote for, when they adopted the general Incorporation law? They voted, as stated in section 3 of article 1, "For city organization under general law." Paragraph 90 was a part of such general law. Therefore they voted for paragraph 90, as well as for the other parts of the act. Some elector may have been induced to vote for organization under that act for the very reason, that paragraph 90 imposed a wholesome restriction or limitation upon the power of the city council to grant the use of the streets to railroad companies. Was such elector bound to look through the whole volume of Illinois legislation to see if there might not be some act upon some subject, which might impliedly repeal some of the provisions of the Incorporation law that he favored and intended to vote for? If the people were not voting for the plain provisions of the act submitted to their suffrages but for the hidden and occult implications of some other act not brought to their notice, and whose effect upon the act voted for it would require the acumen of an astute lawyer to determine, then the election was a mockery and a cheat. (*The People* v. *Wright,* 70 Ill. 388.) "From the time of such change of organization the provisions of this act shall be applicable

to such cities." Paragraph 90 was one of such provisions, and therefore from May, 1875, it became applicable to the city of Chicago.

But, in our opinion, the Horse and Dummy act was not in conflict with paragraph 90, and, not being inconsistent therewith, continued in force under the last clause of section 6, as above quoted.

It may here be observed, that, while the precise question involved in this case is now before this court for the first time, yet paragraph 90 has been recognized as a valid and subsisting limitation since the Horse and Dummy act went into force in the following cases: *Wiggins Ferry Co.* v. *East St. Louis Union Railway Co.* 107 Ill. 450; *Chicago Dock Co.* v. *Garrity et al.* 115 id. 155; *Chicago and Western Indiana Railroad Co. et al.* v. *Dunbar et al.* 100 id. 110; *Hickey* v. *Chicago and Western Indiana Railroad Co.* 6 Bradw. 172; *Schuchert* v. *W., C. and W. Railroad Co.* 10 id. 397. In the *Wiggins Ferry Co. case*, decided in 1883, we said: "Of course in towns, cities or villages organized under the general Incorporation law, which requires such assent, * * * the assent of the requisite number of the abutting property owners will be required, *as well as that of the municipality.*" In the *Chicago Dock Co. case*, decided in 1885, we said, speaking of the power conferred by clauses 9 and 25 of section 1 of article 5 of the Incorporation law: "In our opinion, this power is subject to the limitation imposed by the ninetieth clause of section 1 of article 5."

We are, therefore, of the opinion that the ordinances of the city council, as the same are set forth in the information, which granted to appellee the use of certain streets therein named, were void for want of the petition required by paragraph 90. *Hickey* v. *Chicago and Western Indiana Railroad Co. supra.*

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.                                        *Judgment reversed.*