**W. H. Stead, Attorney General of the State of Illinois, and F. E. Latch, State's Attorney for the County of Shelby, Appellees, v. W. C. Fortner and Ross Ward, Appellants.**

1. DRAMSHOPS—*local option elections.* Where a township and a city therein have become anti-saloon territory by a township and city election, respectively, a vote at a subsequent township election that the same shall not remain anti-saloon territory does not cause the city to become saloon territory.

2. DRAMSHOPS—*construction of statute.* Any statute for the curtailing or prevention of liquor traffic should be liberally construed.

3. DRAMSHOPS—*nuisance.* The legislative declaration that the keeping of a place where intoxicating liquor is sold in violation of the Local Option Law is a common nuisance, is conclusive of that fact.

4. EQUITY—*jurisdiction to restrain saloon nuisance.* A court of equity has jurisdiction to restrain the use of places for the sale of intoxicating liquors in violation of the Local Option Law, though the act is also made criminal by statute.

5. ATTORNEY GENERAL—*may restrain saloon nuisance.* The Attorney General may sue to restrain the use of places for the sale of intoxicating liquor in violation of the Local Option Law and declared to be a nuisance thereby, even though no pecuniary or property interests are involved.

6.  INJUNCTION—*to restrain saloon nuisance should be limited in time.*  An injunction to restrain the use of premises for the sale of intoxicating liquors in violation of the Local Option Law should be limited to such time as the territory shall remain anti-saloon.

Appeal from the Circuit Court of Shelby county; the Hon. J. C. McBRIDE, Judge, presiding.  Heard in this court at the October term, 1911.  Reversed in part and remanded with directions.  Opinion filed March 15, 1912.

**Statement by the Court.**   W. .H. Stead, Attorney General of the State of Illinois, and F. E. Latch, State's Attorney of Shelby County, for and on behalf of the People of the State of Illinois, on May 15, 1911, filed an information in equity in the Circuit Court of Shelby county showing the court:

(1)  That the county of Shelby, in the state of Illinois, is under township organization, and the town of Shelbyville is a town incorporated under the general laws of Illinois, and a political subdivision of said county, and that the city of Shelbyville is a city incorporated under the general laws of Illinois and situated within the town of Shelbyville, but its territory is not co-extensive with the town of Shelbyville and its corporate limits cover much less territory.

(2)  That at the town election in the town of Shelbyville on April 7, 1908, the proposition "Shall the town of Shelbyville become anti-saloon territory?" was submitted to the voters and that by a majority of the votes cast at that election the town of Shelbyville became anti-saloon territory, according to the provisions of the Local Option Act, and at the city election in the city of Shelbyville on April 21, 1908, there was submitted to the voters of the city of Shelbyville the proposition "Shall the city of Shelbyville become anti-saloon territory?", and that by a majority of the votes cast at that election, the city of Shelbyville became anti-saloon territory.

(3)  That at the town election in the town of Shelbyville, held on April 7, 1911, the town of Shelbyville ceased to be anti-saloon territory, but the proposition

"Shall the city of Shelbyville continue to be anti-saloon territory?" has never been submitted to the voters of the city of Shelbyville, whereby since the election of April 21, 1908, the city of Shelbyville has continued to be and now is anti-saloon territory.

(4) That on May 9, 1910, the city council of the city of Shelbyville pretended to pass an ordinance granting licenses to saloons within the city of Shelbyville, which was immediately signed by a mayor *pro tem.* and afterwards vetoed by the mayor, but at the next session of the city council the said ordinance was passed, in violation of the Local Option Act, over the veto of the mayor by a two-thirds majority. That prior to the passage of the said ordinance over the veto of the mayor, pretended licenses were issued by the mayor *pro tem.* and the city clerk to divers persons, one of which was to M. C. Fortner to conduct a place for the sale of intoxicating liquors in a certain building on the east side of Morgan street, between Main and First streets, giving the legal description of the premises in the city of Shelbyville, Shelby County, Illinois.

(5) That the mayor and city council of the city of Shelbyville on May 1, 1911, again issued pretended and illegal licenses to various parties to retail intoxicating liquor in said city for a period of one year, and that one of said pretended licenses was issued to M. C. Fortner to retail intoxicating liquor in the said described building.

(6) That from May 9, 1910, the said described building has been openly and continuously used as a place for the illegal sale of intoxicating liquor by said Fortner, and continues to be and is now so used, that during all the time since May 9, 1910, said Fortner has, in open defiance of law, continuously and wilfully sold intoxicating liquors at retail in said building to great numbers of persons; that during all the time aforesaid, the illegal use of said building and the illegal sales of intoxicating liquors therein have been permitted by

Ross Ward, the owner of said building, and that said illegal sales are now made therein by M. C. Fortner with the knowledge and consent of said owner of said building.

(7) That the illegal sales of intoxicating liquors aforesaid by the said persons have been made with the knowledge and consent of the local authorities of the city of Shelbyville, viz.: the mayor, the city council, and of the sheriff of the county, and such sales and the use of said building by said Fortner for said purpose are in open violation of law, and the local authorities have failed to prosecute for such unlawful sales or to attempt to prevent the same.

(8) That on July 8, 1910, informations were presented in the County Court of Shelby county by J. H. Yencer against the defendant Fortner and others, charging each of them with selling intoxicating liquors in the city of Shelbyville, and with maintaining a common nuisance in violation of law, but the county judge of said county refused to order warrants to issue thereon.

(9) That at the November term, 1910, a list of witnesses, who were willing to testify to such illegal sales of liquor, was presented to the foreman of the Grand Jury, but the Grand Jury refused to hear said evidence.

(10) That at the March term, 1910, of the Circuit Court of Shelby county, said Latch presented the said violations of law, with a list of one hundred witnesses, to the Grand Jury empaneled at that term who would testify to said illegal sales of liquor by said Fortner and others, but the Grand Jury refused to hear said witnesses, or to return any indictment against said Fortner or others.

(11) That the said building, owned by said Ross Ward and so occupied by said Fortner, has for the period of one year last past been continuously used as a place for the illegal sale of intoxicating liquor, and

is now so used by said Fortner in open violation of the Local Option Law with the consent of said owner; that by reason of the premises the said building is a common nuisance and offensive to the public order and economy and law of the state; that the said illegal sales of intoxicating liquor in said building are in flagrant violation of law and with the acquiescence of the city and county authorities, whose duty it is to prevent and prosecute such violations, whereby a proscribed business, evil in its influences, is permitted to exist, subverting the public morals and engendering a contempt for law in that community; that Fortner intends to and will continue to sell liquor in said building unless restrained; that all remedies at law have been and will continue to be ineffectual to secure the enforcement of the law in the city of Shelbyville; that, unless the court will restrain the illegal sale of intoxicating liquor in said building, the laws of the state will be persistently violated, and that such a condition exists in Shelbyville as requires the intervention of a court of equity.

(12) The information prays an injunction perpetually restraining the defendants from using or permitting said premises to be used as a place for the sale of intoxicating liquor.

The defendants demurred to the information and state as special causes of demurrer (a) that informants have an adequate remedy at law; (b) that the information does not charge any damages to the property rights of any person, and (c) that no special jurisdiction being given by statute and no property rights being involved a court of chancery has no jurisdiction. The court overruled the demurrer, and defendants abiding by their demurrer, the court entered a decree finding the facts as alleged in the information, that the said building as used is a common nuisance, and decreeing that the defendants abate the same and perpetually enjoining them from using or permitting the

use of the said premises for the sale of intoxicating liquors. The defendants appeal.

W. C. & W. L. KELLEY and CHAFEE & CHEW, for appellants.

W. H. STEAD, W. EDGAR SAMPSON and F. E. LATCH, for appellees; EMERY ANDREWS, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The first question presented for review is, Was the city of Shelbyville, at the time the licenses were granted to the defendant, Fortner and others, to sell intoxicating liquors, anti-saloon territory? Section 8 of the Local Option Act provides that all the territory within any political subdivision which has become anti-saloon territory shall continue to be anti-saloon territory throughout its entire extent until the legal voters thereof have voted according to the provisions of the act to discontinue such anti-saloon territory, and that the following section shall be construed in harmony therewith. Section 2 provides, that upon the filing of a petition, as in the act provided, containing the signatures of legal voters of any political subdivision, to submit to the voters of such political subdivision, the proposition, "Shall this ———— become anti-saloon territory?" said proposition shall be submitted. The act also provides that "anti-saloon territory" shall mean all the territory within the limits of any town, precinct, city or village in which, through the action of the voters therein, the sale of intoxicating liquor is prohibited; that "political subdivision" shall mean the phrase "town, precinct, city or village," and that in the phrase "Shall this ———— become anti-saloon territory?" the proper word "town," "precinct," "city," or "village" shall be inserted in the blank and the same shall be inserted in the petitions and ballots prepared for the voters. The act provides,

that such election can only be held at a time fixed by law for regularly choosing town, city or village officers, and the petition for such election must be filed at least sixty days before the election. One of the contentions of appellants is that because the town of Shelbyville, within and a part of which is the city of Shelbyville, had on April 7, 1908, voted to become anti-saloon territory, that therefore, the city of Shelbyville had no legal right to vote on April 21, 1908, upon the question whether the city of Shelbyville shall become anti-saloon territory. Under the statute any town, precinct, city or village has the right to vote on the question, shall its territory become anti-saloon territory. The precincts of the city of Shelbyville are only part of the precincts that make up the town of Shelbyville. The town of Shelbyville by voting upon the question and becoming anti-saloon territory would not preclude any lesser political unit, either city or precinct, from voting on the question, and causing such lesser unit to remain dry until both the larger unit and any lesser unit contained therein voted that both the larger and lesser unit should not remain anti-saloon territory. (Schwartz v. People, 104 Pacific R. 92.) The traffic in intoxicating liquor is recognized as an evil and menace to society, and any statute for the curtailing or prevention of such traffic should be liberally construed. This statute was enacted with a view of promoting anti-saloon territory. To give it the construction contended for by appellants would be to so construe it as to promote saloon territory against the will of a city or precinct—the lesser unit. The vote of the town of Shelbyville, in 1910, that the town should not remain anti-saloon territory, did not make the lesser unit, the city of Shelbyville, become saloon territory, but the territory of the city remains anti-saloon territory.

The city of Shelbyville being anti-saloon territory, the next question presented is, has a Court of Equity

jurisdiction to enjoin the use of property therein for the illegal sale of intoxicating liquors, at the suit of the Attorney General of the state, without an allegation of pecuniary damage to private or public property.

The Local Option Act provides, in Section 14, that "all places where intoxicating liquor is sold in violation of any provision of the act shall be taken and held and are declared to be common nuisances and may be abated as such." The legislative declaration, that such places are a common nuisances, is conclusive of that fact, and it is not competent for a party to show that it is not in fact a nuisance. Laugel v. City of Bushnell, 197 Ill. 20; Dennehy v. City of Chicago, 120 Ill. 627; Crowley v. Christenson, 137 U. S. 86.

The Local Option Act has a double aspect. It provides a punishment for the persons transgressing its provisions, and makes property used for the illegal sale of liquor thereon a common nuisance. There is no good reason apparent why proceedings may not be prosecuted under both phases of the statute. The principle is laid down in Story's Equity Jur., Sections 921, 923 and 924, that courts of equity have jurisdiction to abate common nuisances. In Section 921 Story says: "In regard to public nuisances the jurisdiction of courts of equity seems to be of very ancient date and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property." In Section 923, he says: "In cases of public nuisances properly so called, an indictment lies to abate them and to punish the offenders. But an information also lies in equity to redress the grievances by way of injunction. The instances of the interposition of the court, however, are (it is said) rare and principally confined to informations seeking preventative relief." In Section 924, he says: "The ground of this juris-

diction of Courts of Equity in cases of purpresture, as well as of public nuisances, undoubtedly is their ability to give a more complete and perfect remedy than is attainable at law, in order to prevent irreparable mischief and also to suppress oppressive and vexatious litigation." In Mugler v. Kansas, 123 U. S. 672, it is said: "The courts can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest and abate those in progress and by perpetual injunction protect the public against them in the future. * * * This is a salutary jurisdiction, especially where a nuisance affects the health, morals or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury." In 4 Pomeroy's Eq. Jur., Section 1349, it is stated: "A Court of Equity has jurisdiction to restrain existing or threatened public nuisances by injunction at the suit of the attorney general in England, and at the suit of the state, or the people, or municipality or some proper officer representing the commonwealth in this country."

This doctrine that the Attorney General has power to abate a public nuisance by an information in equity was early recognized in the courts of this state. "The court of chancery may grant preventative as well as remedial relief and this may be done where the act threatened would be punishable under the criminal laws as a nuisance." People v. St. Louis, 5 Gilm. 351; Smith v. McDowell, State's Attorney, 148 Ill. 51; Hunt, Attorney General, v. Chicago, H. & D. Ry. Co., 121 Ill. 638. It is not necessary for the Attorney General, in the information, to show that the nuisance causes a pecuniary damage to the public. 5 Pomeroy's Eq. Jur., Sec. 479; Joyce on Nuisances, Sec. 81; Smith v. McDowell, State's Atty. (supra), 21 Am. & Eng. Ency. of Law, 705; In re Debs, 158 U. S. 564; State of Missouri v. Canty, 15 L. R. A. (N. S.) 747. It is not the

selling, or the keeping for sale, or the resorting for the purpose of drinking, that constitutes the nuisance and against which the nuisance part of the statute is directed, but it is the keeping of a place where any or all of these things are done, that constitutes the nuisance. Joyce on Nuisances, Sec. 400; State v. Chapman, 10 L. R. A. 432; Carleton v. Rugg (Mass.) 5 L. R. A. 432.

Appellants insist that, because the statute provides a remedy by indictment and that on a conviction the Criminal Court may enter an order abating the nuisance, that the remedy at law is ample and a Court of Equity may not take jurisdiction. The proceeding in equity is against the property; the fact that selling liquor illegally is a breach of the law, does not make the proceeding in equity a criminal one. That a defendant may have been indicted and acquitted of keeping a nuisance will not necessarily deprive a Court of Equity of jurisdiction to abate the nuisance. Minke v. Hopeman, 87 Ill. 450; 1 High on Inj., Sec. 745. That the statute has added to the jurisdiction of the Criminal Court the right to abate a nuisance will not take from a Court of Equity jurisdiction over a matter which was within its jurisdiction before the enactment of the statute.

Appellants further contend that the validity of the license cannot be tried in this proceeding and that that question can only be tried by a proceeding in *quo warranto*. If that be true, still the nuisance on the premises could not be abated by such a proceeding, but an additional suit would be necessary to abate the nuisance, while in this suit, if equity has jurisdiction, the nuisance is abated by the one suit.

Appellants argue that the cases of People v. Condon, 102 Ill. App. 449, and Cella v. People ex rel., 112 Ill. App. 376, are conclusive that a Court of Equity has no jurisdiction in this case. In these cases an injunction was sought against the personal conduct of

the defendants to restrain them from committing criminal offenses, and not against the use of property by defendants. In the case at bar the suit is against the use of property as used, to restrain its use as a nuisance. The status of the real estate is the gist of this suit, and the cases relied upon are clearly distinguishable from this case.

We regard the reasoning in the cases of Hunt v. Chicago H. & D. Ry. Co., 121 Ill. 638; People v. St. Louis, 5 Gilm. 351; Smith v. McDowell, State's Atty., 148 Ill. 51; Hoyt v. McLaughlin, 250 Ill. 442; Chicago Fair Grounds Assn. v. People, 60 Ill. App. 488, in which the using of premises for pool selling was enjoined; In re Debs (supra); State ex rel. v. Crawford, 28 Kans. 726, where the maintenance of a saloon in violation of law was enjoined as a nuisance; State ex rel. v. Hobart, 8 Ohio N. P. 246; Walker v. McNelly, 121 Ga. 114, where the maintenance of a bar room within three miles of an academy was restrained; Commonwealth v. McGovern, 116 Ky. 212, 66 L. R. A. 280, in which the use of property for a prize fight was restrained as a nuisance; Missouri v. Canty, 207 Mo. 439, 15 L. R. A. (N. S.) 748 in which bull fighting was restrained as a nuisance; Commonwealth v. Respass, 131 Ky. 807, 21 L. R. A. (N. S.) 836, in which at the suit of the state the use of premises for pool selling was enjoined as a nuisance, and Attorney General v. Cockermouth, L. R. 18 Eq. 172, as conclusive of the question that a Court of Equity has jurisdiction to declare and abate a nuisance, and is not deprived of such jurisdiction merely because the maintenance of such nuisances constitutes a statutory criminal offense, and that nuisances may be abated at the suit of the attorney general although pecuniary or property interests are not involved. The facts properly pleaded in the bill are by the demurrer admitted to be true, and the allegations of the bill state a proper case for the restraining power of a Court of Equity.

The defendants by the decree are perpetually restrained from using or permitting said premises to be used for the sale of intoxicating liquors. They have raised no question as to the extent of the injunction. The continuation of the injunction should have been limited in time, to until the voters of the city of Shelbyville shall, if they ever do so, vote that such territory shall not remain anti-saloon territory. The case is reversed with instructions to the court to so modify the injunction, in all other respects the decree is affirmed. *Affirmed in part, reversed in part and remanded with directions.*