## People, etc., v. John Condon et al.

102    449
110   4   73
102    449
d112 ⁴381
d112 ⁴382

1. REMEDIES—*Exist for the Redress of Every Wrong.*—The law provides a remedy for the redress of every wrong and for the vindication of every right. But the party complaining must select the appropriate remedy, and if he errs in doing so, the law can not assist him.

2. SAME—*Private and Public Wrongs.*—Where the right to be vindicated or the wrong to be redressed is a private one, the aggrieved party

must bring the action in his own name; but if it be a public one, the action must be commenced in the name of the proper public officer.

3. SAME—*Position of the State Before its Own Tribunals.*—When the state comes before one of its judicial tribunals, it stands in the same position as to jurisdiction, rights and remedies, as does the humblest litigant, appealing to the law under like circumstances. It is not exempt from the rules applicable to ordinary suitors, but must establish its case and its right to the peculiar relief sought by it.

4. COURTS OF EQUITY—*No Jurisdiction in Matters Merely Criminal or Immoral.*—A court of equity has no jurisdiction in matters merely criminal or immoral. It leaves the correction of these matters to the criminal courts. The remedy at law is presumed to be adequate, but if it is not so, the relief must come from the law-making power and not from the courts.

5. SAME—*No Jurisdiction in Matters of a Political Character.*—A court of equity is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation upon which its jurisdiction rests. It has no jurisdiction in matters merely criminal or immoral, which do not affect a right of property.

6. INJUNCTIONS—*To Restrain the Commission of Criminal Acts.*—The mere neglect or refusal of the proper officers to perform their duty in enforcing the law against criminal offenders constitutes no ground on which a court in equity can interfere by enjoining the commission of criminal acts.

**Bill for an Injunction,** to restrain gambling, pool selling, etc. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 23, 1902.

Statement.—This is a bill for injunction filed on behalf of the people, by the state's attorney of Cook county, against John Condon and others. The bill alleges that on and prior to June 10, 1901, certain associations carried on the unlawful business of gambling and maintaining a betting ring in connection with a race track situate in the town of Proviso in said Cook county. That Condon is the owner of this property. That it is reached by five lines of transportation from the city of Chicago, and is daily frequented by people from that city. That June 10, 1901, the defendants sold the right to maintain betting stalls or bookmaking at this track, and boys were hired to go about the grand stand for the purpose of placing bets upon the races

People v. Condon.

there run. That the pool sellers there publicly sold pools on such races. That the daily attendance was from 6,000 to 10,000 persons, and that much money was placed with such gamblers and changed hands on the result of such races. That rates of fare were low. That the so-called Harlem Jockey Club is a voluntary association of persons, assuming that name for the purpose of concealing their identity. That it is the intention of this club to continue such races, at intervals, during 1901, and to sell the privilege to conduct gambling stands on such premises. That large numbers of persons congregate there and engage in unlawful practices, to the annoyance of the law-abiding citizens of said town and city. That the maintenance of such betting ring causes from 5,000 to 10,000 dissolute persons to daily gather there, many of whom become intoxicated and disorderly and disturb the peace of said town and its vicinity, and annoy the residents of said city who are compelled to use such lines of transportation. That people are led to wager not only their own money, but also that of others. That the criminal laws are inadequate and convictions thereunder are exceedingly difficult. That many of these offenders have no fixed place of abode, and when indicted will escape, and others will take their places. That there is no adequate remedy except by injunction. That under the ordinary remedy of indictment these parties will escape punishment, and the public nuisance will continue. That the sheriff of said county has declared himself unable to prevent book-making and pool-selling. That by reason of the press of business in the Criminal Court that court is unable to prevent the continual violation of the law by this club. That it is hard to procure witnesses in particular cases, but it is not difficult to prove that this betting ring is run every afternoon. That the betting ring and the character of the people frequenting the same are public nuisances, the effect of which is to debase public morals and to depreciate the value of property in the vicinity of such track and along said lines of transportation.

The bill prays that defendants be enjoined from the commission of these illegal acts, etc.

June 17, 1901, a temporary injunction was granted, without notice, and many of the defendants served by copy. Condon and Miers, two of said defendants, answered the bill, and supported their answer by many affidavits. June 28, 1901, upon the hearing upon the bill and answer, supported by affidavits, the court dissolved the injunction, and on motion of complainant's solicitor, dismissed the bill.

Appeal prayed and perfected.

CHARLES S. DENEEN, state's attorney, for appellant; A. C. BARNES and WASHBURN & MUNGER, of counsel.

A. B. JENKS and T. A. MORAN, attorneys for appellees; T. A. MORAN, of counsel.

MR. JUSTICE BALL delivered the opinion of the court.

The law provides a remedy for the redress of every wrong and for the vindication of every right. But the party complaining must select the appropriate remedy. If he fail to do so, the law can not help him, for otherwise the law would cease to be a rule of action, and thus cease to be law. If the right to be vindicated or the wrong to be redressed be a private one, the aggrieved party must bring the action in his own name. If it be public, the action must be commenced in the name of the proper public officer. (Patterson v. The State, 37 S. W. Rep. (Tex.) 478.) It follows that a public officer in his suit can not redress a wrong which is merely private, or vindicate a right which is merely private. Neither the private suitor nor the public suitor can supplement a defective case by asserting that the act complained of is in violation of the criminal statutes. Sparhawk v. Union Passenger Ry. Co., 54 Pa. St. 401.

That pool selling, as set forth in the bill, is a violation of the criminal statutes of this State and is *per se* a public nuisance, is admitted. That such offense may be punished, and ought to be punished, and, if possible, should be prevented, is beyond question.

The fact that the State in this case appears as a suitor, does not strengthen the argument. When the State comes

People v. Condon.

before one of its judicial tribunals, it stands in the same
position as to jurisdiction, rights and remedies as does the
humblest litigant appealing unto the law in like circum-
stances.   The State is not exempt from the rules applica-
ble to ordinary suitors; that is, it must establish a case of
equitable cognizance, and a right to the particular relief
demanded.   People v. Canal Board, 55 N. Y. 390.

The injury to property in the vicinity of the race track
and upon the routes leading thereto, as alleged in the bill,
seems to have been abandoned on the hearing, as counsel
in their brief do not refer to it.   If this be not so, and the
affidavits offered by complainant be considered as in evi-
dence (although under the rules of the trial court it is plain
they were properly excluded), the answer and accompany-
ing affidavits clearly overcome and outweigh any claim of
injury to person or property by reason of the facts alleged
in the bill.

The case is then presented of a bill filed by the state's
attorney to enjoin a public nuisance, upon the ground that·
the criminal laws of this State, as administered, are inade-
quate to suppress such nuisance and continued violation of
the criminal law, without a clear and adequate showing of
injury resulting therefrom to public civil rights or to pub-
lic property.

The language of every opinion is to be measured by the
facts of the case.   The persuasive force of every proposi-
tion therein contained is limited by the same facts.   In
order to get at the real meaning of an opinion, the reader
must put himself in the situation of the writer.   This can
not be done unless the facts are kept constantly in mind.
With this thought in view, let us examine the authorities
cited by the appellant.

The case of Chicago Fair G. A. v. The People, 60 Ill.
App. 488, is based upon the fact that a corporation, the
agent of the State, was engaged in " the doing of acts
*ultra vires*, which tend to public injury, are opposed to
public policy, and are unlawful," and it is there held that
the State has " such an interest in the charters it grants to

corporations as enables it, through the intervention of a
court of equity, by the process of injunction, to stop further
continuance of violations of law, to the detriment of the
public, by corporations acting as its agents."

The bill in the case at bar alleges that the Harlem Jockey
Club is not a corporation and the answer admits it.   It fol-
lows that this case is not in point here.

The main question decided in Mugler v. Kansas, 123 U.
S. 628, is that the Kansas statute relating to the sale of
intoxicating liquors is constitutional.   That point being
thus determined, the jurisdiction of a court of equity to
enjoin the defendants from using the described premises as
a place where intoxicating liquors might be sold, followed;
for Section 13 of that statute provides:

"The attorney general, county attorney or any citizen
of the county where such nuisance exists, or is kept, or is
maintained, may maintain an action in the name of the
state to abate and perpetually enjoin the same.   The in-
junction shall be granted at the commencement of the
action, and no bond shall be required."

In the case of Atty. General v. Jamaica Pond Aqueduct,
133 Mass. 361, an information in equity was filed to restrain
the defendant, a corporation, from lowering Jamaica pond
below the level fixed by statute, thereby impairing the
rights of the public in the use of the pond for fishing and
boating, etc., and creating and exposing upon the shores of
the pond, slime, etc., "very detrimental to public health."
The court says, as to the grounds of jurisdiction, on page
363:

"This information, therefore, can be sustained on the
ground that the unlawful acts of the defendant will pro-
duce a nuisance, by partially draining the pond and expos-
ing its shores, thus endangering the public health."

And on page 364:

"There is another ground upon which, in our opinion,
this information can be maintained.   The great ponds of
the commonwealth belong to the public, and like the tide-
waters and navigable streams, are under the control and
care of the commonwealth.   The rights of fishing, boating,
bathing and other like rights, which pertain to the public,

are regarded as valuable rights, entitled to the protection of the government."

This case might have been safely cited by the defendants.

In Swigart v. The People, 154 Ill. 284, the appellant was arrested upon a warrant charging him and others with keeping a common gaming house, etc.    The court say, page 294:

"It is clear, therefore, that the room or space within the grand stand within the enclosure of said Garfield Park Club, kept and used, as we have seen, for the purpose of book-making and selling of pools contingent upon the result of horse races, the seller or buyer of the pools winning the money wagered upon the race or losing it, was a common gaming house, within the meaning of the statute."

This is the only question in the case.    It establishes a proposition which is not disputed here, but it gives us no aid in the solution of the questions now under discussion.

In re Debs, 158 U. S. 564, the court had issued an injunction forbidding Debs and others from interfering with the operation of certain great railroad highways, along which the interstate commerce traveled and the mails were carried.    It was charged that Debs had violated that injunction.    His discharge was sought on a writ of habeas corpus, upon the ground that the court had no jurisdiction to issue the injunction.    The court denied the lack of jurisdiction, and punished Debs for contempt of court in disobeying the injunction.    On page 583 the court say:

"Neither can it be doubted that the government has such an interest in the subject-matter as enables it to appear as party plaintiff in this suit.    It is said that equity only interferes for the protection of property, and that the government has no property interest.    A sufficient reply is that the United States have a property in the mails, the protection of which was one of the purposes of this bill."

And on page 593:

"Again it is objected that it is outside the jurisdiction of a court of equity to enjoin the commission of crimes.    This, as a general proposition, is unquestioned.    A chancellor has no criminal jurisdiction.    Something more than the threatened commission of an offense against the law of the land

is necessary to call into exercise the injunctive powers of the court. There must be some interference, actual or threatened, with property rights of a pecuniary nature; but when such interferences appear, the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

And on page 598 :

" The scope and purpose of the bill was only to restrain forcible obstructions of the highways along which inter-state commerce travels and the mails are carried. And the facts set forth at length are only those facts which tended to show that the defendants were engaged in such obstructions."

These extracts show what was in the mind of the learned judge who wrote that exceedingly able opinion, and the line of thought along which he was then traveling. It is true that on page 584 he says :

" We do not care to place our decision upon this ground alone. Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrong-doing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court."

He then cites two cases in that court, and sums up this point by saying :

" It is obvious from these decisions that while it is not the province of the government to interfere in any mere matter of private controversy between individuals, or to use its great powers to enforce the rights of one against another, yet, whenever the wrongs complained of are such as affect the public at large, and are in respect of matters which by the constitution are intrusted to the care of the nation, and concerning which the nation owes the duty to all the citizens of securing to them their common rights, then the mere fact that the government has no pecuniary interest in the controversy is not sufficient to exclude it

from the courts, or prevent it from taking measures therein to fully discharge those constitutional duties."

An examination of this whole opinion shows that the court intended to place and did place the right to issue this injunction upon the sole and only ground that the property of the United States had been interfered with.

The case of The State v. Hobart, 8 Ohio Leg. News 167, was decided by a *nisi prius* judge. The opinion is able, but it seems to us that it goes too far and is opposed to the current of authority.

A court of equity has no jurisdiction in matters merely criminal or merely immoral. It leaves the correction of these offenses to the criminal courts. The remedy at law under the statute is presumed to be adequate, for it is what the law has provided. If it be inadequate, relief is to be had from the law-making power and not from the courts. We can not amend such defects.

" It is elementary law that the subject-matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. Nor do matters of a political character come within the jurisdiction of a court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of government, except under special circumstances, and where necessary for the protection of rights of property." Sheridan v. Colvin, 78 Ill. 237–247.

In the absence of any injury to property or property rights, a court of equity will not lend its aid by injunction to restrain the violation of public or penal statutes or the commission of immoral or illegal acts. Tiede v. Schneidt, 99 Wis. 201.

In Ocean City Ass'n v. Schurch, 57 N. J. Eq. 268, a bill was filed to prevent the running of a bathing establishment upon the Lord's day. In denying a motion for a preliminary injunction, the court say :

"So far as the complainant seeks the aid of this court because the acts of the defendant are obnoxious to the vice and immorality acts, and in the nature of a crime, there is the highest authority for the refusal to allow an injunction simply to prevent the commission of a crime. Lord Eldon in Gee v. Pritchard, 2 Swanst. 413, declared that the court had no jurisdiction to prevent the commission of crimes. This does not deny the preventive jurisdiction of this court to protect property from a threatened act, which, if completed, would give a right of action. But if the act to be restrained constitutes a crime only, and is not destructive of property, nor of a character which will result in pecuniary damage, an injunction will not be allowed. It is quite obvious, therefore, that the supposed criminal phase of the acts of the defendant can not be considered by this court as a ground for equitable relief. If the furnishing the means for a Sunday bath is the conducting of business obnoxious to the criminal law, that law affords remedies quite as immediate in their restraint, upon the criminal, as is the process of this court.

"If an act be illegal, I am not to grant an injunction to restrain an illegal act, merely because it is illegal. I could not grant an injunction to restrain a man from smuggling, which is an illegal act." Solteau v. DeHeld, 2 Sim. & Stew. 153.

The mere neglect or refusal of the proper officers to perform their duty in enforcing the law against offenders, constitutes no ground on which a court of equity can interfere by enjoining the criminal act. People v. District Court, 26 Colo. 386.

In Atty. General v. Utica Ins. Co., 2 John. Ch. 371 (decided in 1817 by that great jurist, Chancellor Kent), an information was filed by the attorney-general, in which he set up the statute prohibiting unauthorized banking, and alleged that the defendant, incorporated as an insurance company only, had engaged in the business of banking, contrary to that statute, and prayed that the defendant might be enjoined from transacting any business incident to incorporated banks, etc. The chancellor says:

"If the charge be of a criminal nature, or an offense against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct juris-

diction of this court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy of law was not sufficiently adequate. Nor ought the process of injunction to be applied but with the utmost caution. It is the strong arm of the court, and to render its operation benign and useful, it must be exercised with great discretion, and when necessity requires it." (P. 378.)

" I know that the court is in the practice of restraining private nuisances to property, and of quieting persons in the enjoyment of private rights; but it is an extremely rare case, and may be considered, if it ever happened, as an anomaly. for a court of equity to interfere at all, and much less preliminarily by injunction, to put down a public nuisance which did not violate the rights of property, but only contravened the general policy." (P. 380.)

" The plain state of the case then is, that an information is here filed by the attorney-general to redress and restrain, by injunction, the usurpation of a franchise, which, if true, amounts to a breach of law and of public policy. I may venture to say that such a prosecution is without precedent in this court, but it is supported by a thousand precedents in the courts of law. How, then, can I hesitate on the question of jurisdiction ? "

In Cope v. The Fair Association, 99 Ill. 489, a bill was filed by a stockholder of the Fair to restrain that corporation from permitting, for a pecuniary reward, gamblers to congregate and ply their vocation upon the grounds of the company, it not appearing that the complainant or the company had thereby sustained any pecuniary loss. The court refused to permit the injunction to be issued, saying :

" It is no part of the mission of equity to administer the criminal law of the state or to enforce the principles of religion or morality, except in so far as it may be incidental to the enforcement of property rights, and perhaps other matters of equitable cognizance."

The case of The State v. O'Leary, 155 Ind. 526, is so nearly like this, that with a change of names of the persons and inserting " Harlem " in place of " Roby," the synopsis of the bill as it appears in the opinion could well be used in this case. Like unlawful acts and like disastrous and immoral results are averred. Like indifference and inaction upon the part of the officers of the law are set up.

The vagrant and wandering habits of the defendants are identical in the two bills. There was like lack of proof that any person had been annoyed or disturbed by the acts complained of, or that any property rights of the state were, or were likely to be, injuriously affected. The court found for the defendants. The court said that the question " for decision is whether an injunction may be had on the application of the State to suppress a gambling house, where no injury to property is shown; where no person has been annoyed or disturbed; where gambling in all of its forms is made a criminal offense by statute, and the ordinary criminal process for its punishment and suppression is in full force and available to the State. * * * So far as the record discloses, no private person has made complaint of any injury sustained, or likely to be sustained by himself or his property. Under these circumstances, we can see no legal reason why resort should not be had to criminal proceedings to punish and suppress acts, every one of which is expressly forbidden by the code as a crime or a misdemeanor, instead of casting the burden of the abatement of these unlawful practices upon the civil side of the court. A civil suit by information, in the name of the State, filed by the attorney-general, and the local prosecuting attorney, is but an indirect method of accomplishing an end which could more properly and more satisfactorily be attained by indictment. The apathy or sympathy of the local community and the negligence of the public officers, which prevent a criminal prosecution, or render its result doubtful, can not be regarded as a reason why a civil action should be substituted for a criminal proceeding, and why the alleged violation of the criminal law should be tried and determined by a judge instead of a jury."

These decisions established beyond successful contradiction three propositions:

1.　That a court of equity has no jurisdiction over matters merely criminal or merely immoral.

2.　That a court of equity will sometimes enjoin a public nuisance.

3.   That this will be done in no case where the State is the complainant, unless it be clearly shown that such nuisance affects public property or public civil rights.

To cite further cases in detail would be an affectation of learning.   One desirous of pursuing the subject further will be instructed by Goodrich v. Moore, 2 Minn. 61; Attorney-General v. Tudor Ice Co., 104 Mass. 239; Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212; Creighton v. Dahmer, 70 Miss. 602; In re Sawyer, 124 U. S. 200; People v. District Court, 58 Pac. R. (Colo.), 604; State v. Patterson, 37 S. W. Rep. 478; O'Brien v. Harris, 31 S. E. Rep. 745; World's Columbian Exposition v. U. S., 56 Fed. R. 654.

The case made by this bill, stripped of its irrelevant matter and viewed dispassionately, is nothing more than a direct violation of the criminal statutes.

The courts must administer the law as it is, and believing, as we do, that the matters here involved show no adequate ground for equitable relief, the decree of the learned chancellor in dismissing the bill upon the hearing will be affirmed.