## CHARLESTON.

DENHAM v. ROBINSON, JUDGE.

LANG (J. G.) v. ROBINSON, JUDGE.

LANG (A. A.) v. ROBINSON, JUDGE.

Submitted March 11, 1913.  Decided March 18, 1913.

1. CRIMINAL LAW—*Entry of Nolle Prosequi—Sufficiency.*
   The entry of a *nolle prosequi* by the prosecuting attorney, though the attorney general joins therein, without the consent of the court, is ineffective to discontinue a prosecution upon an indictment by a grand jury.  (p. 247).

2. SAME—*Nolle Prosequi—Consent of Court.*
   Though the rule at common law is otherwise, the practice long followed in Virginia, before the separation, and since then in trial courts of this state has become crystalized into our law, and a *nolle prosequi* entered without the consent of the court will be unavailing to discharge the accused from prosecution.  (p. 248).

3. SAME—*Jurisdiction—Discharge of Prisoner.*
   A trial court by discharging a prisoner from the custody of the sheriff, on his surrender by his bail in open court, does not thereby lose jurisdiction of the indictment or thereafter to retake the accused on a new capias and put him upon his trial upon the indictment.  (p. 251).

72 W. Va.

·4.  SAME—*Adjourned Term*—*"New Term"*—*Discharge—Want of Prosecution.*

An adjourned term of a circuit court, or of the criminal court of Harrison County, had pursuant to section 4, chapter 112, Code 1906, is not a new term, but a continuance of the term adjourned; and one then under indictment and who would at the end of that term if not tried be entitled to his discharge, because three terms had elapsed after indictment found, without trial, is not entitled to such discharge, if brought to trial at such adjourned term. (p. 252).

(POFFENBARGER, PRESIDENT, and LYNCH, JUDGE, dissent).

Petition to show cause by A. A. Lang and Sherman C. Denham for writs of prohibition against James W. Robinson, Judge of the Criminal Court of Harrison County, and others.

*Writ Refused.*

*Sperry & Sperry* and *Geo. W. Hoffheimer,* for petitioners.

*Louis A. Johnson,* for respondents.

MILLER, JUDGE:

On petitions and rules to show cause against it, petitioners seek to prohibit, Hon. James W. Robinson, Judge of the Criminal Court, and A. Judson Findlay, Prosecuting Attorney, of Harrison County, from proceeding further upon certain indictments against them charging them respectively, with embezzlement, while deputy sheriffs, of public funds and property, of said county, coming into their possession by virtue of their said offices, places and employments.

The indictments were returned at the December Term, 1911, of said court, at which term the petitioners voluntarily appeared, and entered into recognizances for their subsequent appearances to answer the indictments; and leave was granted them to plead thereto, on or before the next regular term, being the March Term, 1912, of said court. At that term, petitioners appeared, and after certain motions and pleas tendered by them were rejected, their motions to require of the State a bill of particulars was sustained, and a bill of particulars was filed, and without further action the cases were then continued until the next regular June term of the court, petitioners again entering into recognizances for their appearances at that term. At the June

Term, 1912, petitioners again appeared, but no action on these, indictments was then had or taken, except that petitioners again entered into recognizances for their appearances at the next regular term, which by law was appointed to be held in November of that year. At the November term continued and held on December 16, 1912, the following order, in the Denham case, being the same as in the other cases, except as to names, was entered: "This day came the State by her Prosecuting attorney, and the defendant Sherman C. Denham, in his own proper person, and by Sperry & Sperry and George M. Hoffheimer, his counsel. And the panel of jurors heretofore regularly drawn and in attendance at the regular term of this court, to-wit, the November term, 1912, having been discharged for the term on the 13th day of December, without the consent of the said defendant, thereupon the said State, by her prosecuting attorney, by the advice and consent of the attorney general of said State, says that she will not further prosecute the said defendant on the indictment aforesaid, and moved the court that the defendant be discharged from the said indictment and go thereof without day. But the court having considered said motion of the said State, doth refuse its assent thereto for the reason that Fred O. Blue, State Tax Commissioner of the State of West Virginia, heretofore on the ———— day of December, 1912, by private communication with the Judge of this court, although not in the presence of this defendant, did inform the said Judge that the State Tax Commissioner aforesaid desired a trial of the said defendant upon the said indictment at an adjourned term of this court and requested that such adjourned term be held and that no *nolle prosequi* be entered, and that the defendant be not discharged without trial at this present term of this court. And it is therefore ordered that the assent of this court to the *nolle prosequi* and discharge of the said defendant upon the said motion of said State by her prosecuting attorney be, and the same is hereby denied, to which opinion and ruling of the court the said defendant then and there duly excepted. And leave is given to the said defendant to tender and have signed, sealed and made part of the record herein, his bill of exceptions, within thirty days from the adjournment of this term. And thereupon, Melvin G. Sperry, surety of the said

defendant upon the recognizance of the said defendant, given in open court at the last term thereof, to-wit, on the 15th day of June, 1912, at the bar of the court, surrendered the said defendant to the custody of Percy Byrd, sheriff and jailer of this county and it is ordered that the said recognizance heretofore given by the said defendant and by said Melvin G. Sperry, as surety, be and the same is hereby discharged and set aside. And the said defendant being so surrendered as aforesaid, the court, upon its own motion, doth order, and it is hereby ordered that the said defendant Sherman C. Denham, be and he is hereby discharged from the custody of said sheriff upon the indictment aforesaid."

This was the only action of the court in these cases at that term, except the following order, entered on the same day: "This court being about to end without dispatching all its business, it is ordered that the court do now adjourn until the 17th day of February, in the year 1913."

At the adjourned term, held on the day appointed in February, defendants were called, and not appearing, capiases were awarded for their apprehension and to bring them into the court to answer the indictments. And the petitions allege that on the convening of the court at this term on request of the court counsel for petitioners appeared, but in their absense, and the prosecuting attorney announcing in open court that he desired to proceed with the trial of petitioners, their counsel, in their absense, stated to the court in substance the following: "Our respect for this Court and our sense of obligation as members of this Bar, constrain Mr. Sperry and myself to state briefly the views which we entertain with respect to the indictments returned at the November Term, 1911, against Sherman C. Denham, John G. Lang and Adelbert A. Lang. It is our opinion that by the orders entered in this court on the 16th day of December, 1912, the prosecutions against said defendants upon said indictments were finally and effectually terminated, and that this court no longer has jurisdiction of or over said defendants, and further than this we have nothing to submit for the consideration of this Court at this time." And it is further alleged that thereafter on motion of the prosecutor, the capiases were awarded, and that unless prohibited defendants in-

tend to and will place petitioners on trial on said indictments at the pending adjourned term of the court.

The returns of respondents admit all the material facts as alleged.

The grounds on which petitioners rely, as stated in their petitions, are substantially: 1. That by the *nolle prosequi* entered by the Prosecuting Attorney by the advice and consent of the Attorney General, the prosecution of petitioners on said indictments was finally ended and determined. 2. That even if the *nolle prosequi* so entered without the consent of the court was ineffectual the order discharging petitioners from the custody of the sheriff terminated the indictments and prosecution thereon, and that the Court thereby lost jurisdiction of the indictments, and to try petitioners thereon. 3. That there having been three regular terms of the Court after the indictments were found without trial, petitioners were thereby, by virtue of section 25, chapter 159, Code 1906, forever discharged from prosecution for the offences alleged against them, and that for this reason also said Court was without jurisdiction of said indictments or to try petitioners thereon at said adjourned term, or at any term thereafter.

First, then, did the *nolle prosequi* entered in these cases become effectual without the consent of the court? *Nolle prosequi* 'has been variously defined, as follows: "An entry made on the record, by which the prosecutor or plaintiff declares he will proceed no further." Bouv. Law Dict., 503. "A formal entry upon the record by the prosecuting officer, by which he declares that he will not further prosecute the case, either as to some of the counts of the indictment, or part of a divisible count, or as to some of the defendants, or altogether." Clark Crim. Proc. 155; Black's Law Dict. 820; 12 Cyc. 374. As will be observed these definitions do not include the "consent of the court"; but they do not necessarily exclude it. They conform to the common law rule not requiring such consent. It is conceded on both sides that at common law the action of the attorney general could not be controlled by the court, after indictment found, and before entry upon the trial, and the rights of defendant on trial has supervened. 23 Am. & Eng. Ency. Law, 276; 12 Cyc. 375; 1 Bishop Crim. Proc. (3rd ed.) section 1388; *People*

v. *Dist. Court,* 23 Colo. 466; *The Confiscation Cases,* 7 Wall. 454; *United States* v. *Watson,* 7 Blatchf. 60; *United States* v. *Coolidge,* 2 Gall. 364; *United States* v. *Shoemaker,* 2 McLean 114; *United States* v. *Schumann,* 7 Sawy. 439; *Com.* v. *Wheeler,* 2 Mass. 172; *Sloncen* v. *People,* 58 Ill. App. 315. The rule of the common law is the one followed in the federal courts, as some of the cases cited show.

But the question here is does the rule of the common law obtain in West Virginia? It is clearly not a rule of substantive law which a prisoner has the right to enforce. At most it is but a rule of practice, available to the discretion of the attorney general, or prosecutor, representing the state, and as the authorities cited show one which at common law could not be controlled by the court. In the Colorado case cited, especially relied on by petitioners, and where it is said the common law rule prevails, Chief Justice Hayt, says: "In a few states the power of the district attorney to enter the *nolle prosequi* has been denied, but such denial, we think, has generally been based upon statutes *or the practice in those states.* The practice of consulting the court and getting its permission to discontinue a criminal prosecution having been followed in those states, without exception, for many years before being challenged in the appellate courts, when so challenged the higher court gave as a reason for denying the right of the district attorney to enter a *nolle prosequi* without the consent of the court, that the contrary practice had been *followed so long as to become crystalized into law.*" In 23 Am. & Eng. Ency. Law, *supra,* page 276, the authorities pro and con are collated in notes. After citing the cases adhering to the common law rule it is said: "Other cases hold that the power to enter a *nolle prosequi* is to be exercised only with the assent and approval of the court." Citing the cases. 1 Bishop, Crim. Law, §1389, says the same. So says 12 Cyc. 375. It was conceded in argument that beginning with *Anonymous,* 1 Va. Cases, 139, where the question was directly and distinctly decided, by the general court, that this has been the rule in Virginia. And that such has been the uniform practice in Virginia, and in this state since it was formed, is manifest from the language of the courts in *Lindsay* v. *Com.,* 2 Va. Cases, 345; *Com.* v. *Adcock,* 8 Grat. 663; *Randall* v.

*Com.,* 24 Grat. 646; *Com.* v. *Wortham,* 5 Rand. 669.  While we have been cited to no case in this court and have found none directly deciding the point, yet it is admitted that such is the uniform practice in the trial courts, as it is proper it should be, following Virginia decisions, binding us.  It is contended for respondents also that our statute, section 17, chapter 36, Code 1906, controls.  Its language, applicable here, is: "And if any prosecuting attorney shall compromise or suppress any indictment or presentment without the consent of the court entered of record, he shall be deemed guilty of malfeasance in office, and may be removed therefrom in the mode prescribed by law." The spirit of this statute is undoubtedly in harmony with the practice of entering a *nolle prosequi,* but it may be doubtful whether that statute was intended to control the prosecuting attorney in all cases.  It occurs in the chapter relating to the mode of recovering fines.  But would not a cautious and discreet prosecutor, for his own protection, obtain the consent of the court to a discontinuance of a case so compromised or suppressed?

But it is argued that the rule of practice obtaining in the trial courts can not control the action of the attorney general, who concurred with the prosecuting attorney; and we are cited many state and federal cases, for the proposition, that the attorney general is a constitutional officer with few defined powers and that by the federal and state constitutions the mantle of the attorney general of England must be deemed to have fallen upon the office of attorney generals of all the American states, when uncontrolled by the organic law or some legislative enactment.  This proposition is affirmed on the authority of Art. 7, section 1, Const. W. Va.; *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273; 3 Am. & Eng. Ency. Law, (2nd ed.) pp. 475, 476, 479; *People* v. *Miner,* 2 Lans. 397; *State* v. *Robinson,* 101 Minn. 277, 112 N. W. 269; *Hunt* v. *Chicago H. & D. Ry. Co.,* 121 Ill. 638, 13 N. E. 176; *Regina* v. *Allen,* 1 Best & Smith 851, and our case of *State* v. *Ehrlick,* 65 W. Va. 700.  We can not accede to the proposition in its entirety.  So far as the attorney general may undertake to exercise or control the powers and duties of prosecuting attorneys we think he is limited by the same rules of practice that control them.  The

powers and duties of prosecuting attorneys are generally defined by section 6, chapter 120, Code 1906, and as was said by Judge POFFENBARGER in *State* v. *Ehrlick, supra:* "We may say the office of prosecuting attorney has been carved out of that of attorney general and made an independent office, having exclusive control, to some extent, of business of the state, arising within the county. No doubt the attorney general may assist the prosecuting attorney in the prosecution of such business, or perform it himself, in case of the non-action of the prosecuting attorney, but he cannot displace that officer." We are of opinion, therefore, that the *nolle prosequi* attempted in this case derived no additional force, because concurred in or assented to by the attorney general.

Another point in connection with this proposition, not noted by counsel, has occurred to us. The reason given by the court below for withholding its assent to the entry of a *nolle prosequi* is that the State Tax Commissioner had objected, and had requested the continuance of the case to an adjourned term. We think we may assume that these prosecutions grew out of the auditing of the public accounts of the defendants by the State Tax Commissioner. Section 7, chapter 10B, Code Suppl. 1909, contains this provision: "If any such examination discloses misfeasance, malfeasance or nonfeasance in office on the part of any public officer or employee, a certified copy of the report shall be filed with the proper legal authority of the taxing body for such legal action as is proper in the premises. Refusal, neglect or failure on the part of the proper legal authority of the taxing body to take prompt and efficient legal action to carry into effect the findings of any such examination, or to prosecute the same to a final conclusion, shall give to the chief inspector the right to institute the necessary proceedings or to participate therein, and to prosecute the same in any of the courts of the state, to a final conclusion." Who is the legal authority of the taxing body of the county? Is he not the prosecuting attorney, under chapter 120, Code 1906? Section 6 of that chapter, we think, makes him so. Section 5 of the same chapter imposes upon the attorney general none of the specific duties imposed upon the prosecuting attorney by the sixth section. If it was the opinion of the State Tax Commissioner that the prosecuting

attorney or the attorney general was by the proposed entry of the *nolle prosequi* neglecting any duty in the prosecution of defendants, we think it was his right under the section referred to to interpose, and to participate in the prosecution of defendants.

Second, did the court below, the *nolle prosequi* being ineffectual, lose jurisdiction of the indictments and to try the defendants, by discharging them from the custody of the sheriff? We think not. The indictments still remain. The court plainly did not intend to discharge the defendants from prosecution. This is manifest from the character of the order, and by the court's refusal to concur in or consent to the entry of the *nolle prosequi*. The order shows that the prisoners were surrendered by the bail in open court. In such cases, section 12, chapter 162, Code 1906, says, the court "shall take such order as it deems best." We must assume that good reasons then appeared to the court for not committing the prisoners to jail, but there was no discharge from prosecution, and the court by the same order adjourned the term to a later date, for the evident purpose of bringing the prisoners to trial upon the indictments. The order is susceptible of no other reasonable construction. At one time it was questioned whether the entry of a *nolle* relieved the defendant from prosecution on the same indictment, but there seems to be no question about that now. *Com.* v. *Wheeler*, 2 Mass. 172, 173, opinion of Sedgwick, Judge. Now the entry of a *nolle prosequi* is deemed a discontinuance of the suit, a declination on the part of the prosecutor to further prosecute, on the indictment or that part of it to which the *nolle* relates. But where the indictment remains, and the prisoner is out on bail or escapes, or is even discharged upon the order of the court from custody or imprisonment, there is no loss of jurisdiction upon the indictment. What is to prevent the court in such cases from awarding a new capias to retake the defendant as in the first instance? It is true our statute seems to make no provision for one accused or convicted of crime to go at large, and without recognizance of bail, and it may have been abuse of power for the court in this case to have discharged the defendants from custody. But is that a matter of which defendants can complain or take advantage when about

to be re-arrested upon a new capias to answer the charges against them? We think not. The authorities cited by counsel for the proposition, that indefinite suspension of sentence after a plea or verdict of guilty, divests the court of jurisdiction to pronounce judgment or punishment, are wholly inapplicable. Nor do the authorities cited for the proposition that, one indicted for a felony must be present at every step taken in the cause affecting him, have application. The award of a capias is not within the meaning of *State* v. *Stevenson,* 64 W. Va. 392, or *State* v. *Parsons,* 39 W. Va. 464, cited for the proposition. Those cases relate entirely to proceedings on the trial, not to process.

The third and last point to be considered is, were defendants entitled to be discharged, because three regular terms of the court had elapsed after the indictments were found, without trial? If three regular terms had so elapsed, section 25, chapter 159, Code 1906, entitles them to be forever discharged from prosecution, and to the writs prayed for. Notwithstanding the plain import of the words of the statute, support for the proposition that an adjourned term is a new and distinct term, and not a part of or continuance of the regular term adjourned, is sought in certain language of the statute; for instance, the words of section 4, chapter 112, Code 1906, providing: "If any term of a circuit court is *about to end* without dispatching all its business;" and of section 5, of the same chapter: "If any term of such court *has ended.*" The words "about to end" and "has ended" are emphasized, as implying that when an order for an adjourneed term is entered the term adjourned is thereby *ended,* for by the statute, unless a term is "about to *end*" there is no warrant for an order for an adjourned term, and that there is no difference so far as such an adjournment is concerned between an adjourned term and a special term, called by authority of section 5, when "any term of such court *has ended.*" We see little force in this argument. What did the Legislature mean by providing in the same chapter for adjourned terms and special terms? Authority to call special terms was required; but the provision for adjourned terms was merely declaratory of the common law right of all courts to adjourn from day to day or from time to time. *Mann* v. *County Court,* 58 W. Va. 651.

If no provision for adjourned terms had been made in the statute would any one argue, that at common law, an adjournment from one day to a distant day, would not be a continuance of the same term? Would any one say that the day from which and the day to which adjournment was taken was the end of one and the beginning of a new term? And what is there in the statute providing for an adjourned term implying a different rule? Absolutely nothing except the words "about to end," and that provision giving finality to all judgments, orders and decrees rendered and made before or on the day of such adjournment, and giving them the same force and effect in all respects, to use the language of the statute "as if said court had finally adjourned on that day." Now although the term may have been "about to end," if the court concluded on an adjournment, and so ordered, it did not finally adjourn, because it adjourned to another day, and thereby saved the effect of final adjournment, except as provided by the statute. There is nothing in *Bank* v. *Parsons,* 45 W. Va. 688, in conflict with the view. The question there was whether within the meaning of section 2, chapter 114, Code 1906, the court could be said to have adjourned at a time when it was necessary for the judge to have departed to be at the place in time to begin a court appointed by law to be held in another county, and it was decided, that the end of the term here meant was the actual end of the term by actual adjournment.

The provision of the statute giving finality to judgments and decrees previously entered was not intended to characterize the terms as final in other respects, for by the statute, adjournment to another day is not a final adjournment. The business of the term not completed is by force of the statute carried over to the day to which the term is adjourned. True we held in *Tunney* v. *Steel & Iron Co.,* 69 W. Va. 158, that a bill of exceptions in relation to a judgment entered at a term which is so adjourned must be saved either before adjournment or within thirty days thereafter. But that construction was necessary to give full force to the statute giving finality to judgments and decrees so entered. As to business not disposed of the adjourned term is a continuance of the regular term adjourned. What other meaning could be given to the statute authorizing an adjourned term?

We think none that would be reasonable. In support of our construction another provision of said section 4, is enlightening: "The court may, in its discretion, require the jury summoned to attend such term, to attend as such on the adjourned day, or may require a new jury to be drawn and summoned in the manner required by law; and all witnesses summoned to attend in causes so continued to such adjourned term, are required to attend said term without being again summoned." This provision, however, is merely declaratory of the common law.

But we are not wanting in adjudged cases to support our construction of the statute. In *Alexandria* v. *Withers,* 6 Wheaton 107, Chief Justice Marshall said, apropos to the facts in this case: "There being nothing in any act of Congress which prevents the courts of the district from exercising a power common to all courts, that of adjournment to a distant day; the adjournment of the 16th of May to the fourth Monday in June, would be a continuance of the same term, unless a special act of Congress, expressly enabling the courts of the district to hold adjourned sessions, may be supposed to vary the law of the case. That act is in these words: 'And the said courts are hereby invested with the same power of holding adjourned sessions that are exercised by the courts of Maryland.' These words do not, in themselves, purport to vary the character of the session. They do not make the adjourned session a distinct session. They were, probably, inserted from abundant caution, and are to be ascribed to an apprehension, that courts did not possess the power to adjourn to a distant day, unless they should be enabled so to do by a legislative act. But this act, affirming a preexisting power, ought not to be construed to vary the nature of that power, unless words are employed which manifest such intention. In this act, there are no such words, unless they are found in the reference to the courts of Maryland. But on inquiry, we find, that in Maryland, an 'adjourned session' is considered as the same session with that at which the adjournment was made."

We do not see from the record that the rights of the petitioners to a speedy trial, guaranteed by the bill of rights, has in any way been invaded by the delay. They were entitled to reasonable time to prepare for trial, and the state to three full terms

to bring them to trial, before they were entitled to their discharge. While the records presented show other pleas and motions interposed by defendants, overruled, we do not find that pleas of not guilty were ever entered. Of course nothing is to be presumed from this. The state was bound to prove them guilty on the trial before conviction could be had. But the inaction of the defendants is some evidence that no wrong or injury was intended by the prosecuting officers. The record shows that a number of indictments were found against petitioners, and trial and acquittal on some. It is not unreasonable that some delay should follow in such cases. In *Com.* v. *Adcock*, 8 Grat. 661, 680, it is said: "The sole object and purpose of all the laws from first to last, was to ensure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him." And in *Ex parte Santee*, 2 Va. Cases 363, 365, the court says: "That whilst it has an eye to the solemn duty of protecting the public against the wrongs of those who are regardless of their obligations to society, and to the delays which the Commonwealth may unavoidably encounter in prosecuting breaches of these obligations, it is studious to shield the accused from the consequences of the laches of those to whom the duty of conducting the prosecution may have been assigned. The public has rights as well as the accused, and one of the first of these is, that of redressing, or punishing their wrongs. It would not seem reasonable that this right, so necessary for the preservation of society, should be forfeited without its default."

Our conclusion is that petitioners are not entitled to the writs prayed for and they will be denied.

*Writ Refused.*

POFFENBARGER, PRESIDENT, *(dissenting):*

Unable to accept the proposition stated in the fourth point of the syllabus, I am compelled to dissent, and would grant the writs of prohibition prayed for.

Viewed from the standpoint of its character and substantial provisions, not from its mere name, the term designated as an adjourned term and provided for in section 4 of chapter 112 of

the Code, is a new and special term.  It is called because the
court is unable to complete its business before the expiration of
the regular term.  It is so much another term that the legis-
lature found it necessary to continue to it all cases on the docket
not otherwise disposed of.  It is so essentially a new term that
the jury of the expiring term may be discharged and another
one summoned for the adjourned term.  The legislature found
it necessary also, to make its intention clear, to expressly provide
that all witnesses summoned in the cases continued shall attend
the adjourned term without being again summoned.

This makes the adjourned term practically the same as a
special term provided for in sections 5, 6 and 8 of the same
chapter, to be called when the court has ended without having
dispatched all of its business, or there has been a failure to
hold any term, or when, in the opinion of the judge, the public
interests require a special term.  The occasion for the adjourned
term and a special term is exactly the same, and likewise the
purpose.  In the latter case, the term does not actually end and
another one is called. ˙ In the former, the court, foreseeing
inevitable ending of the term, without disposition of all of its
business, provides for another term by designation upon its
order books.

Taking the court's recital as to the occasion for the adjourned
term, or reason for providing for it, as true, these petitioners
would have been entitled to a discharge by reason of the ex-
piration of the regular term without a trial, if the adjourned
term had not been provided for.  Their legal right to a dis-
charge would have vested, had not the court called an adjourned
term.  Had the adjourned term not been called, the regular
term would have ended without trial of the petitioners, and a
special term, admittedly a new and distinct one, would have
been called for exactly the same purpose for which the adjourned
term was provided.

The construction given the statute by the court, making the
adjourned term a part of the previous term for all purposes,
except those specifically excepted by the statute, inevitably en-
ables the court to do at the adjourned term what it could not do
at the regular term, if its recital be true, nor at the special term,
and, to curtail, to this extent, the right of the prisoner conferred

by another statute.  The effect of that statute is thus cut down by unnecessary implication and the right of trial within three terms, given by another statute, is thus limited and qualified.

A case of a person not tried, for want of time, but triable, at the third regular term after the one at which he is indicted, is a case disposed of by the law otherwise than by continuance, for, on the expiration of the regular term, the law discharges him. This must be so, unless we say the legislature intended to limit and cut down the right of such persons without having said so in so many words or in terms necessarily implying such intent. If due effect be given to the phrase "not otherwise disposed of" and the presumption against legislative intent to amend one statute by another, as a matter of mere uncertain and unnecessary implication, the legal discharges here claimed are within the exception made by the statute itself.  Under my interpretation, the cases are, in the language of the statute, otherwise disposed of, on the ending of the term, by the force and effect of another statute.

One of the consequences flowing from the construction given the statute by the Court is that the state, represented by the trial court to some extent, as shown in the opinion, may always give the state a virtual continuance under the guise of an adjourned term, when it has no ground upon which a continuance could be obtained in the regular way.  I do not mean to say that it has been done in these cases, but the construction given this statute by the majority of this Court opens the door to such a possibility.  That alone is sufficient to condemn the construction. It makes it inconsistent with the statute giving prisoners right to be discharged on the expiration of three regular terms without trial, when the failure to try them at such terms has not been occasioned by their own conduct.  It also gives the state a power of continuance not authorized by any statute or the common law relating to continuance.

In at least one instance, the court has treated the adjourned term the same as a special term, as to a matter not expressly excepted by the terms of the statute.  Section 9 of chapter 131 of the Code allows the trial court to make up and sign bills of exception, in vacation, within 30 days "after the adjournment of the term."  If this provision were governed by the principles

or rules stated in the opinion of the Court, it would allow 30 days after the end of the adjourned term, within which to make up and sign bills of exception; but we have in more than one instance held the contrary, and so treated an adjourned term the same as a special term. Accordingly we require bills of exception to be signed within 30 days from the end of the term at which the adjourning order is entered under this statute.

Section 4 of chapter 112 of the Code was not construed in *Mann* v. *County Court.* The statute analyzed and construed in that case was an entirely different statute, one simply declaratory of the common law. A continuance under that statute gives no right to draw a new jury, nor did the legislature provide, in such cases of adjournment, for the continuance of causes not otherwise disposed of, nor say the witnesses need not be resummoned.

Judge LYNCH concurs in this dissent and opinion.