(No. 32652.-

THE PEOPLE *ex rel.* Ivan A. Elliott, Attorney General, Petitioner, *vs.* DANIEL A. COVELLI, Judge, Respondent.

*Opinion filed April 21, 1953—Rehearing denied May 18, 1953.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (BEN W. HEINEMAN, JOSEPH D. BLOCK, and ROBERT F. HANLEY, all of Chicago, of counsel,) for petitioner.

GEORGE M. CRANE, (HARRY J. BUSCH, MYER H. GLADSTONE, and ROBERT W. HEINZE, of counsel,) all of Chicago, for respondent.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The Attorney General of the State of Illinois, by leave of this court first had, filed his original petition for a writ of *mandamus* directed to the Hon. Daniel A. Covelli, sitting as judge of the criminal court of Cook County, to compel him, first, to vacate and expunge an order granting a petition to suppress evidence on motion of defendants in People v. Lavin *et al.*, and second, to enter *nunc pro tunc* as of July 12, 1952, an order of *nolle prosequi* on petitioner's motion in that case.

In December of 1951 the grand jury of Cook County returned four indictments against Thomas F. Lavin, Jr., and two others, all dealing with various alleged violations of the Illinois Cigarette Tax Act. (Ill. Rev. Stat. 1951, chap. 120, par. 453.1 *et seq.*) All these indictments were in due course assigned by the chief justice of the criminal

court of Cook County to Judge Covelli, a judge of the superior court of Cook County sitting as judge of the criminal court thereof, for trial and disposition. On the trial of one of the indictments, which lasted almost three weeks, the jury returned a verdict of not guilty against all defendants, after deliberating almost twenty-four hours, and judgment was duly entered on the verdict. One of the remaining indictments, which charged substantially the same offense as that charged in the indictment on which the defendants were acquitted, was nolled. The remaining untried indictments charged the defendants with counterfeiting Illinois cigarette tax meter stamps in violation of section 22 of the Illinois Cigarette Tax Act and with conspiracy to violate various provisions of that act.

These proceedings were instituted and prosecuted pursuant to section 16 of the Illinois Cigarette Tax Act, which directs that all legal proceedings thereunder shall be instituted and prosecuted by the Attorney General. Ill. Rev. Stat. 1951, chap. 120, par. 453.16.

After the one indictment was nolled, the Attorney General suggested to the court that the remaining cases be transferred to the chief justice for reassignment. The court continued the case, stating that the chief justice, in assigning cases at the opening of the term, had advised all judges that he did not wish to continue the practice, then prevalent among trial judges, that in the event the chief justice sent three indictments to the trial judge he would try one and send back the other two, but on the contrary that the chief justice directed the trial judges to try all indictments assigned, to which all the trial judges agreed.

One of the defendants, Thomas F. Lavin, Jr., thereafter filed his petition to suppress certain evidence as having been seized in an illegal search, such evidence having been offered by the People and received in evidence at the trial on the first indictment. The petition to suppress came

on for hearing before Judge Covelli, who had presided over and heard the evidence in the first trial. The defendant introduced testimony in support of his petition, and after the defendant rested, the People proceeded with their proof. After two witnesses for the People had testified, the court stated "On the evidence I have already heard, the motion to suppress is sustained." At that time the People apparently had one more witness to present and had made no oral argument.

Under such circumstances, at the time the court indicated that the motion to suppress was sustained the special assistant Attorney General stated, "The Court has not heard the evidence, he has given me no opportunity to present it to the Court or the cases with respect to it  *   *   *  I can only state to this Court now that I respectfully request this Court to retransfer this case."

Upon a denial of such request, the Attorney General orally moved to *nolle prosse* the pending cases, which motion was denied on July 10, 1952.

Two days later the Attorney General presented a written motion for a *nolle prosequi*. The written motion, after setting forth the entry of an order sustaining the petition to suppress before completion by the People of its evidence and without opportunity to present argument, proceeded to state that it was the opinion of the Attorney General that the People did not have sufficient evidence admissible under such ruling to result in a conviction, that it was the Attorney General's considered view that it was not in the best interests of the administration of justice in the State of Illinois to proceed with the prosecution of the defendant in these cases at this time under these indictments, and that to proceed with the prosecution under these indictments at this time under the order of court suppressing evidence would result in a miscarriage of justice.

The court intimated that it would grant the motion of the Attorney General to nolle if the Attorney General

agreed not to seek other indictments against the defendant. When the Attorney General refused to make that commitment the trial court denied the motion. Thereafter, the Attorney General filed a *nolle prosse,* to which the court refused to give any effect, and the cases were set for trial.

The facts from which this petition for writ of *mandamus* originated present to the court two issues. The first is whether the Attorney General of the State has the constitutional power in the specific situation presented by the instant case to *nolle prosse* the proceeding in his absolute discretion free of encroachment by the judiciary. The second issue is whether the trial court acted so arbitrarily and capriciously in sustaining defendant's petition to suppress evidence as to require this court to award the writ.

The legislature in this State has not by specific statutory authority endowed the Attorney General with power to *nolle prosse* criminal prosecutions. It thus becomes a question for decision whether, in the situation we find here, there is included among the inherent powers of the Attorney General the power to *nolle prosse,* the maintenance of the proceeding in his judgment being no longer in the public interest.

In *People ex rel. Barrett* v. *Finnegan,* 378 Ill. 387, this court considered the nature of the office of Attorney General and the powers appendant thereto, observing, "The office of Attorney General, as it existed at common law, is one of ancient origin. He was the only law officer of the Crown. (4 Reeves Hist. Eng. Law, chap. 25, p. 122.) The prerogatives which pertained to the crown of England under the common law, in this country are vested in the people, and the necessity for the existence of a public officer charged with the protection of public rights and the enforcement of public duties, by proper proceedings in the courts of justice, is just as imperative here as there. In this State, the constitution, by creating the office of Attorney General under its well-known common-law designation

and providing that he shall perform such duties as may be prescribed by law, engrafted upon the office all the powers and duties of an Attorney General as shown at the common law, and gave the General Assembly power to confer additional powers and impose additional duties upon him. The legislature cannot, however, strip him of any of his common-law powers and duties as the legal representative of the State. (*Fergus* v. *Russel*, 270 Ill. 304.) The statute creating the office of Attorney General of this State prescribes his duties, which, under the above construction of the constitution, are imposed upon him in addition to the powers exercised by him at the common law."

*Fergus* v. *Russel*, in its discussion of the attorney generalship, states, "The office of Attorney General is created by section 1 of article 5 of the constitution of 1870, * * *. It will be observed that the constitution confers no express powers upon the Attorney General and prescribes no express duties for him to perform. It simply provides that he shall perform such duties as may be prescribed by law. The office of Attorney General was one known to the common law, and under the common law the Attorney General had well known and well defined powers and it was incumbent upon him to perform well known and clearly prescribed duties. It is not necessary, and indeed it would be difficult to enumerate all the powers vested in the Attorney General at common law and all the duties which were imposed upon him to perform. It is sufficient for the purposes of the discussion of the point here involved to state that at common law the Attorney General was the law officer of the crown and its chief representative in the courts. * * * The question presented for our determination is, whether by creating this office under its well known common law designation the constitution engrafted upon it all the powers and duties of the Attorney General as known at common law, and gave the General Assembly authority to confer and impose upon the Attorney General

only such additional powers and duties as it should see fit." The opinion then proceeded to hold that, the Attorney General being an officer known to the common law, the constitution in creating the office did engraft upon the office all the common-law powers and duties of an Attorney General, and permitted the legislature to confer upon him only new and additional powers. It also held that it was not competent for the State legislature to strip him of his time-honored and common-law functions.

The powers and duties of the Attorney General were reviewed in *Hunt* v. *Chicago Horse and Dummy Railway Co.* 20 Ill. App. 282, reversed in an opinion by this court, 121 Ill. 638, but which nevertheless approved and adopted the announcements of the Appellate Court on this subject. That court said, "There is nothing in our present constitution or statute which necessitates, in our opinion, a construction which would exclude the attorney general from the exercise of common law powers in addition to those conferred by the statute. * * * We see, then, no difficulty in interpreting the constitutional provision that the attorney general shall perform such duties as may be prescribed by law, as meaning that he shall perform such duties as shall be prescribed by law, statutory or otherwise, by which the duties of the attorney general, as that officer is known to our jurisprudence, are imposed and defined."

From a review of the foregoing authorities it is fairly obvious that the courts of this State have considered the Attorney General's powers and duties to include not only those conferred by statute, but also those powers and duties inherent in the office as it existed at the common law. It was stated by Justice Blackburn that the power of determining whether the prosecution of an indictment shall go on or not is intrusted to the Attorney General, who is the great law officer of the Crown; and, whether he is right or wrong the court cannot interfere. (*Regina* v. *Allen,* I Best & S. 850.) Thus in *Regina* v. *Comptroller Gen-*

*eral,* I Q.B. (Eng.) 909—C.A., A. J. Smith, L.J., in discussing the broad extent of the powers of the Attorney General, said: "Who can enter a *nolle prosequi* excepting the fiat of the Attorney General is obtained? I do not mean to say that, when some trivial case is before some court, the prosecution may not ask the judge to be allowed to withdraw the prosecution, and that the judge, after having read the depositions, may not say that he agrees that there is no case. But apart from that, who can enter a *nolle prosequi?* In a prosecution by one man against another for a crime, the Attorney General can, if he thinks fit, enter *a nolle prosequi,* and nobody can say anything to him as to whether he enters a *nolle prosequi* or not. He is supreme in that matter, and there is no appeal."

A thorough and exhaustive annotation on the power of a public prosecutor to dismiss a prosecution appearing in 35 L.R.A., beginning at page 701, seems to recognize a very real and ancient limitation on the power. After recognizing that in England the Attorney General had power to make the entry as the representative of the Crown and thereby at once to stay the proceeding in any indictment or criminal proceeding, citing as the basis for such conclusion *Regina* v. *Allen,* I Best & S. 850, the following statement is made: "By the English practice the entry of a *nolle prosequi* was the prerogative of the Attorney General to which there was no limitation (except in case of injury from unlimited repetition. *King* v. *Webb,* 3 Burr. 1468, I W. Bl. 160.)" In *King* v. *Webb,* Lord Mansfield and the entire court, perceiving that an injury might arise from an unlimited number of dissolutions, said, "There can be no such rule that, when a man is indicted for an infamous offense, the prosecutor is entitled to come into court and quash his indictment as often as he pleases, it may be *ad infinitum.* The court will see that no mischief or oppression ensued, before they will grant leave for that purpose." The refinement here urged does not come into

play unless it is obvious that the use of the power of *nolle prosequi* is capricious and vexatiously repetitious.

Thus under the common-law criminal procedure in England, a *nolle prosequi* could be entered only by the authority of the Attorney General, who had exclusive discretion in the matter (9 Laws of England (Halsbury), p. 350,) except that such power could not be exercised repeatedly without good and sufficient cause. In the United States, the powers and duties of the Attorney General with respect to the conduct of criminal prosecutions generally pass to the prosecuting attorney. (69 A.L.R. 240.) The rule is stated in Corpus Juris Secundum to be as follows: "At common law, only the attorney general could exercise the power to enter a *nolle prosequi* on an indictment, and unless by statute the authority is transferred elsewhere, this power is still reposed in the attorney general or in the several public prosecutors. . . . At common law, and under the general rule prevailing in the absence of statute, the matter of entering a *nolle prosequi* rests entirely within the discretion of the prosecuting officer, without leave of court, at all stages of a criminal prosecution before the jury are impaneled, or, as is sometimes stated, before trial of the case." 22 C.J.S., pp. 706-707.

In *People ex rel. Hoyne* v. *Newcomer*, 284 Ill. 315, this court held that a State's Attorney in Illinois did not have the power to enter a *nolle prosequi* at his own discretion. The court was careful, however, to point out that the powers of the State's Attorney are not coextensive with those of the Attorney General, who is the chief law officer of the State and head of the legal department. Although this court in the *Newcomer case* did not consider the powers of the Attorney General of the State, it did have occasion to analyze and consider the common-law powers of the Attorney General of England. We said there, at page 320, "So far as the adoption of the common law is concerned, the power of the Attorney General in England

was not a matter of substantive law but of practice and prerogative. He was the representative of the crown, and the power to enter a *nolle prosequi* in criminal cases which were set on foot by private persons was a prerogative of his office to which there was no limitation."

It is thus apparent that on those occasions when the Illinois courts have had an opportunity to examine into the matter of the rights and prerogatives of the Attorney General of the State, they have quite generally determined that such officer, in addition to those powers and duties conferred by statute, enjoys all the inherent powers and duties of the Attorney General of England under the common law, and that under no circumstances could those powers be denied him.

The Attorney General having been held the chief law officer of the State, and the courts having found that in the creation of that office there were engrafted upon it all the powers and duties of the Attorney General as the same were known at common law, any limitations urged upon his common-law power to *nolle prosequi* must necessarily be of long common-law recognition. In a representative government, such as we enjoy in Illinois, all powers of government belong ultimately to the people in their sovereign corporate capacity. Under such a government the people may distribute, for the purposes of government, the various powers thereof. These they have divided into three departments: Legislative, executive, and judicial. By article III of our constitution it is provided that "no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others." By this provision the people intended to provide, and did provide, a complete separation of the branches, and completely deprived a member of one branch of authority to exercise any power properly belonging to the other two branches. The Attorney General's office is a part of the executive department, and the constitutional powers

exercised by that officer are all executive powers. For any judge or court to assert or to deny the powers of the Attorney General would constitute an unconstitutional encroachment of the judiciary upon the executive department. *Saxby* v. *Sonnemann*, 318 Ill. 600.

Here, at the time of entry of the *nolle prosequi* by the Attorney General, no jury had been impaneled and the defendant had not been put in jeopardy·under these indictments. In presenting this motion for *nolle prosequi* the Attorney General gave as his reasons therefor that, under the rulings on evidence theretofore rendered by the trial court and with which he apparently disagreed, the People did not have sufficient admissible evidence to result in a conviction, and to proceed at that time under the order of the court suppressing evidence would not be in the best interests of the administration of justice in Illinois and would result in a miscarriage of justice. It is also apparent from the record here that the *nolle prosequi* sought to be entered here is not repetitious, this being the only time that a motion for that purpose has been filed. Therefore, the limitation set forth in *King* v. *Webb* to the effect that a court can interfere to prevent an injury from an unlimited number of dissolutions has no application here. The record also discloses that the *nolle prosequi* was sought to be entered before the impaneling of the jury. Therefore, if the general rule prevails as set forth in Corpus Juris Secundum, the Attorney General would have the right to enter the *nolle prosequi* in the instant case. Consequently, whether the rule recognizing absolute discretion in the Attorney General in the matter of *nolle prosequi,* or the rule engrafting limitation upon his power, is applied it is evident that the trial court erred in denying the motion for *nolle prosequi.*

Our disposition of the issue made with respect to the order of July 12, 1952, renders unnecessary a consideration of the issue concerning the order granting the motion to suppress evidence.

Subsequent to submission of this cause, the respondent, on April 15, 1953, presented a motion to dismiss the original petition for *mandamus* upon the ground that the issues involved have become moot and abstract as the result of an order entered by him on March 31, 1953, in Nos. 51-2392 and 51-2394, discharging the defendants, Lavin, Jr., Horwitz, and Nuzzo, conformably to section 18 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1951, chap. 38, par. 748,) which, so far as relevant, requires that when a defendant is not admitted to bail, he must be tried within four months from the day of his commitment, unless the delay is occasioned by the application of the defendant, and that if he is admitted to bail for an alleged criminal offense, other than a capital offense, he shall be entitled, on demand, to be tried within four months after such demand. The Attorney General has countered with a motion to amend the petition for *mandamus* by adding a third prayer for relief, seeking the vacation and expunction of the order entered in Nos. 51-2392 and 51-2394 on March 31, 1953, discharging the defendants in those cases.

It necessarily follows from our conclusion that the Attorney General's motion for a *nolle prosequi* should have been granted and from our direction to enter *nunc pro tunc* as of July 12, 1952, an order of *nolle prosequi* on the *nolle prosequi* filed by the Attorney General, that respondent was without authority after July 12, 1952, and, in particular, on March 31, 1953, to enter the order discharging defendants. Since respondent lacked jurisdiction to enter the order of March 31, 1953, the issues made by the pleadings in this court were not rendered moot and abstract by the entry of the order of March 31, 1953. Accordingly, respondent's motion to dismiss the petition for *mandamus* is denied. Disposition of petitioner's motion to amend the prayer of the petition for *mandamus* to seek vacation and expunction of the order of March 31, 1953, becomes unnecessary.

The writ of *mandamus* should be, and is hereby, awarded directing Daniel A. Covelli, as judge of the superior court of Cook County and as *ex officio* judge of the criminal court of Cook County to enter *nunc pro tunc* as of July 12, 1952, an order of *nolle prosequi* on the *nolle prosequi* filed by petitioner on July 12, 1952, in the cases instituted in the criminal court of Cook County and entitled "People of the State of Illinois v. Thomas F. Lavin, Jr., Jacob J. Horwitz and John Nuzzo," General Nos. 51-2392 and 51-2394.                    *Writ awarded.*