(No. 33693.—

THE PEOPLE *ex rel.* Latham Castle, Attorney General, Petitioner, *vs.* HARRY C. DANIELS *et al.*, Judges, Respondents.

*Opinion filed January 19, 1956—Rehearing denied March 19, 1956.*

44

KLINGBIEL, J., took no part.
DAVIS, J., dissenting.

LATHAM CASTLE, Attorney General, of Springfield, (FRED G. LEACH, MURRAY F. MILNE, and ALBERT E. JENNER, JR., of counsel,) for petitioner.

SEARS AND SOLFISBURG, of Aurora, for respondents.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

By leave of this court, the Attorney General has filed an original petition for *mandamus* asking us to direct the respondents (judges of the circuit court of Kane County) to vacate an order of May 9, 1955, denying the motion of the Attorney General for a *nolle prosequi* in a certain criminal prosecution pending in that court. (People v. Lloyd C. Moody, No. 54-757.) The Attorney General further asks that we direct them to enter *nunc pro tunc*, as of May 9, 1955, an order of *nolle prosequi* on said motion, and to vacate all proceedings and orders (including the verdict and judgment) subsequently entered in the cause.

The undisputed facts disclose the following: On July 26, 1954, a Kane County grand jury returned four embezzlement indictments against Lloyd C. Moody. (Nos. 54-754 through 54-757.) Each of the first three indictments charged the embezzlement of a particular sum of money from a certain individual, but the fourth (No. 54-757) was

a consolidated indictment encompassing the elements of the other three.

On July 30, 1954, the indictments were set for trial as the first case of the September, 1954, petit jury, but on motion of the court were continued to September 13, 1954. On the latter date, there was a continuance (the record not showing at whose request) to the November term. A hearing was held on November 5, 1954, at which time certain motions made on behalf of defendant Moody were denied. Three days later, on November 8, 1954, counsel agreed to a setting on November 29, 1954, and at the request of the court the assistant State's Attorney made an election to proceed on No. 54-757.

Defendant Moody's present counsel entered the case on November 26, 1954, and the trial date was changed to January 11, 1955. By agreement, this was extended to February 14, 1955. Then, on motion of the State's Attorney, the court continued the case to March 21, 1955. At that time the State's Attorney sought to proceed on No. 54-756, but the court insisted that because of the previous election he had to prosecute No. 54-757. Whereupon, the latter moved to enter a *nolle prosequi* in No. 54-757, stating in argument that "there is a possibility in the proof that there would be a variance as to the proof of ownership." (This was predicated upon a belief that there would be a variance as to the embezzlement alleged in No. 54-755, and since No. 54-757 was a consolidated indictment the variance would arise in the latter case also.) The court denied this motion on April 21, 1955.

The State's Attorney then requested the Attorney General to enter his appearance on behalf of the People of the State of Illinois, and shortly thereafter, with consent of the State's Attorney, the Attorney General moved to nol-pros No. 54-757. The Attorney General alleged in this motion that there would be a fatal variance between the proof and the allegation of the ownership of the money

as charged in the indictment, so that it was not in the best interest of the administration of justice in the State of Illinois to proceed with the prosecution.

The trial court (Judge Harry C. Daniels, presiding) denied the Attorney General's motion, and both the Attorney General and the State's Attorney refused to participate further in the proceedings. On the following day, May 10, 1955, circuit judge Mel Abrahamson impanelled a jury to try indictment No. 54-757, and on motion of counsel for defendant Moody directed a verdict of not guilty. After the not guilty verdict was returned, the court entered judgment thereon and discharged the defendant.

On May 16, 1955, the Attorney General requested leave of this court to file a petition for an original writ of *mandamus,* which we granted. Judge Harry C. Daniels, who died during the pendency of these proceedings, has been dismissed as a respondent.

To decide the issue, we must consider the following: (1) Was the Attorney General properly in the case? (2) If so, did the court err in refusing to allow his motion to nol-pros the indictment?

*First,* was the Attorney General properly in the case?

Apart from authority which is vested in the Attorney General by the Illinois constitution, he has by statute the right to assist a State's Attorney in the prosecution of a case. (Ill. Rev. Stat. 1953, chap. 14, par. 4.) A portion of this statute makes it the duty of the Attorney General to do the following: "Fourth—To consult with and advise the several state's attorneys in matters relating to the duties of their office; and when, in his judgment, the interest of the people of the state requires it, he shall attend the trial of any party accused of crime, and assist in the prosecution."

In construing the foregoing, we have held that the Attorney General is authorized to appear not only for consultation and advice but also for whatever assistance may be desirable and beneficial to the prosecution, both during

the trial and in all preliminary and subsequent proceedings arising in the progress of the case. (*People* v. *Looney*, 314 Ill. 150; *People* v. *Billburg*, 314 Ill. 182.) Indeed, as expressed in the *Looney case*, it is the statutory duty of the Attorney General to appear in a prosecution when in his judgment the interest of the people of the State requires it. We have never viewed the powers vested in the State's Attorney as exclusive of those vested in the Attorney General. See Lawless, "The Relationship Between the Attorney-General and the State's Attorney in Illinois," 1949 Law Forum 507.

There is no conflict between the two officers as to the authority residing in each, since the Attorney General intervened at the request of the State's Attorney and acted in aid of the latter. Therefore, it is clear that the Attorney General was properly in the case.

*Second,* did the court err in refusing to allow the motion to nol-pros the indictment?

The Attorney General, whose office is created by the Illinois constitution (art. V, sec. 1), is the chief law officer of the State and has those powers which resided in the Attorney General at common law. His office is a part of the executive department, and neither the legislature nor the courts can deprive him of his constitutionally granted authority. See *People ex rel. Elliott* v. *Covelli,* 415 Ill. 79.

Among the powers of the Attorney General at common law was the right to nol-pros an indictment at all stages of a criminal prosecution before the jury was impanelled or before the trial of the case, except that the action could not be capriciously or vexatiously repetitious. In the *Covelli case,* the Attorney General's conduct was not repetitious at all, since the motion considered was the first *nolle prosequi* filed in the matter. Accordingly, by *mandamus* we compelled the trial court to enter an order of *nolle prosequi* as of the date of filing and expunged a subsequent order discharging the defendant.

We consider the *Covelli case* controlling here. As in that case, there has not been here any such capricious or vexatious repetition as to bring the case within the recognized exception to the Attorney General's right to terminate a criminal prosecution. Rather, it is shown that the Attorney General acted in this one instance alone.

Moreover, it is shown that the Attorney General, after investigating the matter, concluded there would be a fatal variance between the charge and the proof with a resulting miscarriage of justice. For, as noted, it was believed there would be a fatal variance in No. 54-755, one of the separate indictments, and because No. 54-757 was a consolidated indictment, a fatal variance would arise in that prosecution also. Hence, he was faced with a practical problem. If there was an acquittal on the consolidated indictment, prosecution of the other three would be barred. To prevent this, and to save the two indictments where no variance was thought to exist (Nos. 54-754 and 54-756), he had no alternative but to nol-pros No. 54-757. In so acting, the Attorney General clearly did not abuse the discretion vested in him.

There is no record of harassment here, as suggested by respondent's counsel in oral argument. There was no repetition, only one continuance was secured on motion of the State's Attorney, and there is nothing to indicate that either the State's Attorney or the Attorney General did not act in good faith with a desire to prevent an injustice. Despite the previous election to prosecute the indictment, had they gone to trial under these circumstances they certainly would not have acted as the people of this State have a right to expect law officers to act in the enforcement of the criminal law.

There is nothing to demonstrate any abuse of discretion on the part of the Attorney General; therefore, the respondents were under a mandatory duty to enter the order of *nolle prosequi*.

The writ of *mandamus* is hereby awarded directing Mel Abrahamson, as judge of the circuit court of Kane County, Illinois, to enter *nunc pro tunc* as of May 9, 1955, an order of *nolle prosequi* on the motion filed by the petitioner. The respondent is also directed to expunge all orders and judgments entered in said cause subsequent to the filing of said motion.

*Writ awarded.*

Mr. JUSTICE KLINGBIEL took no part in the consideration or decision of this case.

Mr. JUSTICE DAVIS, dissenting:

I am forced to disagree with what the majority have said about the relationship between the State's Attorney and the Attorney General and with their conclusion that this case is controlled by *People ex rel. Elliott* v. *Covelli,* 415 Ill. 79.

The Attorney General relied on his common-law powers to sustain his position in this case. He earnestly maintains that his power to nol-pros is absolute, in the absence of capricious and vexatious repetition; that it is not affected by the consent or lack of consent of the State's Attorney, and that the exercise of the power is not subject to review. I believe the majority's decision accepts the logic of the Attorney General in its entirety, but I do not believe this acceptance is justified by law nor commended to us by any practical considerations.

The majority reasons syllogistically that the Attorney General was properly in the case by reason of his statutory authority to "consult," "advise," and "assist" the State's Attorney. (Ill. Rev. Stat. 1953, chap. 14, par. 4.) As chief law officer of the State, he has the common-law power to enter a *nolle prosequi* in a case where he is prosecuting officer and this power is not ordinarly subject to review by either the trial or Appellate courts. (*People ex rel. Elliott* v. *Covelli,* 415 Ill. 79.) Therefore, the majority reasons,

the Attorney General here could exercise the same broad common-law powers to nol-pros without the consent of the trial court.

I believe the majority's error lies in the failure to distinguish the Attorney General's common-law role as chief legal advisor to the Crown, and his statutory role of assisting another constitutional officer, the State's Attorney. To understand this distinction requires a consideration of the development of the doctrine of the common-law powers of the Attorney General. The leading Illinois case on the subject is *Fergus* v. *Russel,* 270 Ill. 304. This court there held in a four-to-three decision that the English common law was a part of the law of this State, and that by the constitution the Attorney General was vested with the common-law powers of the chief law officer of the Crown. It should be carefully noted that the question there involved the right of the Attorney General to represent State officers. There was no conflict or overlapping of the Attorney General's function and that of any other constitutional officer. It was there pointed out that these common-law powers existed "except where the constitution or a constitutional statute may provide otherwise."

In the *Covelli case* we relied on the doctrine of *Fergus* v. *Russel* in considering the common-law right of the Attorney General to enter a *nolle prosequi* in a case in which he was the statutory prosecuting officer. Again the case involved no conflict with any other constitutional officer with regard to his powers or duties. The Attorney General was there the only one entitled to handle the prosecution. (*People ex rel. Elliott* v. *Covelli,* 415 Ill. 79.) There we specifically noted that we were not dealing with a case in which the State's Attorney was the ordinary public prosecutor.

I conceive this to be a vital distinction. We have clearly held that a State's Attorney can nol-pros only with the consent of the court, and that the court's discretion in this

regard will not be reviewed by *mandamus*. (*People ex rel. Hoyne* v. *Newcomer*, 284 Ill. 315.) We have repeatedly noted that the State's Attorney is also a constitutional officer, and the one to represent the people in matters affected with a public interest. (*People ex rel. Kunstman* v. *Nagano*, 389 Ill. 231.) The office of State's Attorney was unknown to the English common law but was created by our constitution of 1848. On the other hand the constitution of 1848 did not provide for the election or appointment of an Attorney General, and from 1818 to 1870 every Attorney General of this State was an officer provided for by the legislature and regulated by it. However, in 1870, by the adoption of our present Illinois constitution, the office of Attorney General was created as a division of the executive department, and was given such duties as may be prescribed by law. From this history it is clear that the office of State's Attorney in Illinois has been carved out of the common-law office of Attorney General and made an independent office. The two offices are separate and distinct, and the State's Attorney has certain powers and certain duties which can neither be increased nor decreased by the Attorney General. (5 Am. Jur. p. 232.) Among the especial duties of the State's Attorney is the prosecution of all criminal cases within his county. (Ill. Rev. Stat. 1953, chap. 14, par. 5.) In the exercise of this duty he cannot be supplanted by the Attorney General. (*People* v. *Flynn*, 375 Ill. 366.) In attempting to appraise the common-law powers of the Attorney General, the majority has overlooked the fact that we have two constitutional officers with a division of duties, pursuant to legislative enactment. While they are not necessarily mutually exclusive, the Attorney General and the State's Attorney cannot be vested with equal authority in determining the course of criminal prosecutions within a county. The majority finds no conflict between the State's Attorney and the Attorney General

in the case at bar. I do not believe the record entirely bears this out. While the State's Attorney made no objection to the attempted *nolle prosequi* of indictment 757, he ignored the attempted *nolle prosequi* of 755 and made a motion to remand defendant Moody to the sheriff on that indictment even after the filing of the *nolle prosequi*. If the majority ground their opinion on the common law, logically, they should hold that only the Attorney General has the power to determine if a *nolle prosequi* should be entered in any case. (See *Regina* v. *Comptroller*, 1 Q.B. 909—C.A., cited by the Attorney General.) But this conclusion totally disregards the independent position of the State's Attorney under our constitutional enactments. The majority's willingness to accept the common-law powers of the Attorney General in a totally different constitutional and statutory setting creates a dilemma. But it can be easily resolved by accepting the Attorney General's common-law powers when he occupies a traditional common-law role, and rejecting them when he occupies a distinct statutory role as one "assisting" the State's Attorney. In *Denham* v. *Robinson*, 72 W. Va. 243, 77 S.E. 970, the Supreme Court of West Virginia was faced with an identical question. There, the prosecuting attorney, with the advice and consent of the Attorney General, had filed a *nolle prosequi*. It had been denied by the court. Recognizing the argument that the Attorney General had the common-law power to nol-pros, the court there denied the power of the prosecuting attorney and the Attorney General to nol-pros without the consent of the court, saying in language appropriate here: "So far as the Attorney General may undertake to exercise or control the powers and duties of the prosecuting attorneys we think that he is limited by the same rules of practice that control them. * * * We are of the opinion therefore, that the *nolle prosequi* attempted in this case derived no additional force, because concurred in or assented to by the Attorney General."

I think that the conclusion reached by the West Virginia Court is especially sound here. The rights of the Attorney General, as one assisting the State's Attorney, arise not under the common law, but by the acts of the legislature, pursuant to the constitution. In such a case, our attention ought to be directed to legislative intention rather than to the English common law. I regard as significant the legislature's action in tabling the latest proposal of the Attorney General to permit him to conduct local criminal prosecutions. Senate Bill 108, 69th General Assembly; Tabled June 28, 1955.

Considering that this case involves a local criminal prosecution instituted and conducted by the State's Attorney, and that the Attorney General first appeared in the case nine months after indictment and on the day set for trial, I cannot see why this case should not be governed by our decision in *People ex rel. Hoyne* v. *Newcomer,* 284 Ill. 315. In that case, at page 325, we said: "If a State's Attorney has absolute and uncontrolled power to enter a *nolle prosequi* upon his official responsibility in one case, of course, he has the same power in two, three or four hundred, as in this instance; but we regard it as essential to the due administration of justice and the protection of the people by the enforcement of criminal laws that he should not have such power but the consent and approval of the court should be required." I believe the same result should obtain here. In the case before us, the trial court and the State's Attorney were in a much better position to determine the requirements of justice than either the Attorney General or this court. I consider it most unwise to permit either the State's Attorney, or the Attorney General when he enters the case at the eleventh hour to assist the State's Attorney, to have the untrammeled power to dismiss a public prosecution. Even the limited record before us shows that the considerations of justice that motivated the late Judge Daniels to deny the motion to nol-pros arose long before

54

the entry of the Attorney General's appearance and could best be considered by the trial judge. There is greater danger to the public welfare in permitting the Attorney General's executive fiat to completely control all criminal prosecutions in this State than would exist if such action was subject to the consent or approval of the court.